Commonwealth v. Whipps.

---

CASE 50—INDICTMENT—MAY 18, 1882.

## Commonwealth v. Whipps.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The act, entitled "An act for the benefit of W. C. D. Whipps," *approved April* 27, 1880, is constitutional.
2. The first section of the bill of rights in the constitution providing that "all freemen when they form a social compact are equal, and that no man or set of men are entitled to exclusive separate public emoluments or privileges from the community, but in consideration of public services," has no application to this case.
3. The word "privilege," in the meaning of the constitution, is a public privilege, and not a private right, such as is conferred by this act.
4. The granting of such a right is purely a question of policy for the consideration of the legislature.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLANT.

1. The act for the benefit of W. C. D. Whipps, *approved April* 27, 1880, upon its face confers a license to do that which the general law forbids.

Commonwealth v. Whipps.

·2. It is the grant of an exclusive privilege.

.3. The first section of the bill of rights in the constitution provides that "all freemen when they form a social compact are equal, and that no man or set of men are entitled to exclusive separate public emoluments or privileges from the community, but in consideration of public services."

4. The legislature having, by a general law, prohibited lotteries by a heavy fine, has no power to permit appellee to do that which all other citizens are forbidden to do. (28th section Bill of Rights, Constitution; Gordon v. Winchester Building Association, 12 Bush, 110; Cooley on Const. Lim., 391, 392; 3 Greenl., 326; 28 Wis., 464; 2 Yerg., 554; 11 Mass., 396.)

I. & J. CALDWELL & WINSTON AND B. F. CAMP FOR APPELLEE.

·1. The act in question is constitutional. The true interpretation of the first section of the bill of rights is, that the adjectives exclusive, separate, and public, qualify "privileges," and that its effect is the same as if it read "exclusive separate public emoluments, or exclusive separate public privileges." (Patterson v. Trabue, 3 J. J. Mar., 598; 4 Mon., 91; 6 Ib., 592; 1 Dana, 232; 5 Bush, 681; 8 Ib., 451; 1 Henning's Stat., Va., 48; Elliott's Debates, vol. 4, p. 243, sec. 4; 7 Howard, Miss., 247; 27 Miss., 218 (Cushman, V.); 45 Ala., 170; 16. Mass., 422.)

:2. The question of constitutionality must be presented in the record by some one having an interest in the issue. (16 Pick., 96; 6 Allen, 353; 23 Miss., —; 8 Cow., 543; 8 Barb., 489; 11 Wend., 149.)

·3. The court will never hold a legislative act unconstitutional upon any sentiment of supposed morals or public good, or supposed spirit of equality in the constitution. (3 Met., 576; 3 Dana, 209; 6 Cranch, 128; 12 Wheat., 270; 4 Dallas, 18; 24 Ind., 194; Cooley's Const. Lim., 183; 32 Iowa, 250; 62 Ill., 268; 17 N. Y., 241; 1 Ark., 570; 44 Miss., 352; 9 Ga., 258; Ib., 258.)

4. Having granted the act, appellant cannot say the grant is void. (17 Cal., 547; 2 Hawkes, N. C., 13; 7 Bush, 153; 10 Ib., 691; 2 Ib., 254.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, W. C. D. Whipps, was indicted by a grand jury, empaneled in the Jefferson circuit court, of the offense ·of promoting a lottery, by permitting a building occupied .and owned by him to be used for the sale of lottery tickets, for the disposal of money and property by way of lottery, and by advertising a lottery known as the Willard Hotel Lottery, by which it was proposed to dispose of certain

property (described) by lottery, &c.   No objection was made to the indictment, and the defendant, by his plea, traversed the charge made against him, and by an agreement between the attorney for the state and the accused, the law and facts were submitted to the court for judgment. On the hearing, the appellee relied on an act of the legislature, approved the 27th of April, in the year 1880, as vesting him with authority to sell certain property, of which he was the owner, by lottery.

Section first of that act provides: "That it may be lawful for W. C. D. Whipps, of Louisville, Jefferson county, Kentucky, to dispose of the Willard Hotel property, situated on Jefferson street, in the city of Louisville, Kentucky, with two houses and lots on Green street in the rear of the Willard Hotel, &c., and for that purpose may issue and sell by his agents as many certificates of specified undivided interests therein, at prices which will, in the aggregate, amount to the fair equitable value of the property and the costs of disposing of the same in the manner hereby authorized.

"Sec. 2. That Robert Mallory, L. M. Flournoy, H. Clay, H. P. Whittaker, and G. A. Winston be, and they are hereby, appointed commissioners, any three of whom may act, whose duty it shall be to determine by lot, as may be mentioned in said certificates, to what shareholder or shareholders any portion or portions of said property shall belong, and to whom the title thereunto shall be made, and to do and perform all such acts as, in their opinion, may be necessary to carry this act into full effect, and shall invest the funds arising from said certificates in the payment of the just creditors of the said Whipps.

"Sec. 3. This act is intended to apply to the property described herein, and to no other, and when said property

is sold, said grant shall cease and be of no effect: *Provided*, That there shall, in no event, be but one distribution or drawing under this act," &c.

By reason of this act, the appellee claims the right to dispose of his property by way of lottery, and to appropriate the proceeds to the payment of his creditors.

The court below adjudged in his favor by dismissing the indictment, and the Commonwealth is in this court asking a reversal. The attorney for the state maintains that the act in question is in violation of section one of the bill of rights. The section reads: "That all freemen when they form a social compact are equal, and that no man or set of men *are entitled to exclusive separate public emoluments or privileges from the community, but in consideration of public service.*"

The proper construction or true meaning of this section of the bill of rights is the issue presented, and we are aware of no case decided by this court where the question has been directly considered, if at all, and certainly no case analogous to the one under consideration.

Without discussing the grammatical construction of the language used in the section, it is plain, we think, that this constitutional inhibition was intended to prevent the exercise of some public function, or an exclusive privilege affecting the interests and rights of the public generally, when not in consideration of public service, and if made to apply to the exercise of mere private rights or special privileges, it nullifies almost innumerable legislative enactments that are to be found in our private statutes, sanctioned, in many instances, by every department of the state government. It is our boast, as is urged by counsel for the state, "that under our government none are entitled to exclusive rights, but that all are governed by equal laws, subject to like burdens, and

entitled to equal privileges, having one rule for rich and poor, for favorite at court and countryman at plow:" but this doctrine of equality or maxim of constitutional law does not mean that every man must be permitted to exercise the same special or private privilege.  Special privileges may be granted to one or more citizens when the rights of others are not affected by it.  We have general laws enacted for the protection of life, person, and property, with the right to acquire and use our property and its accumulations as we see proper, subject to these general laws, and when not interfering with the rights of others.

The citizen has the right to demand that he shall be governed and protected by these general laws, and when excluded from such protection it is in plain violation of his constitutional rights.  An absolute equality of private rights in the exercise of special privileges, if even possible, is not practicable under our form of government in the light this case has been presented by counsel for the state.  Special privileges must be granted as a matter of necessity, originating not only by reason of our form of government, but from the general laws enacted for the protection of person and property.  General laws cannot always be applied to individual necessities, and particularly with reference to the right of property, and when a special privilege is granted with reference to one's own property, and without injury to others, we perceive no objection to it.  If the legislature should be denied the right, by an amendment to the constitution, to legislate with reference to local or private interests, the sovereign (the people) would confer this right to local tribunals vested with similar powers.  What interest has A in the sale and transfer of the property of B, if it in

no manner affects his private rights? and while under the general law the right of each to sell and convey their property in the same manner cannot be denied, if B, by special enactment, is empowered to sell and transfer his land in a different way, we cannot well perceive how this affects the constitutional rights of A. It is insisted, notwithstanding the existence of the general law, that the special privilege is unconstitutional, because every citizen is not authorized to sell in the same mode; that it is a legislative invasion of the rights of equality, and for that reason within the constitutional inhibitions. Conceding, for the purposes of this case, that this section of the constitution applies to the exercise of a mere private right or special privilege, where is to be found any word of exclusion in the grant of the right to sell the home of the appellee by lottery, or the land of B by parol, and what is to prevent the legislature from granting a like privilege to any citizen upon making the application? But the word *privilege*, in the meaning of the constitution, is a public privilege, and not the exercise or enjoyment of a special privilege.

When the citizen undertakes to discharge a duty to the public that the state is under an obligation to discharge, and in consideration for the undertaking an exclusive privilege is granted, the grant is constitutional, because in consideration of public service. The exclusive right to keep a ferry, to construct and operate highways, &c.—all such exclusive rights are based upon a consideration rendered the public in the discharge of a duty the state was required to perform. It becomes a binding contract, and cannot be violated by either the state or the citizen, nor can it be repealed unless that right is reserved in the grant, or by reason of some

:general law, and with the repeal it has all the essential elements of a contract, and the rights of the parties under it cannot be disturbed.

A mere privilege granted by the legislature for the exercise of a private right is always subject to legislative repeal, and while rights of property acquired by reason of such special privileges cannot be divested, the right to repeal exists until such rights are acquired under it, and even after, except in so far as it may be necessary to protect or preserve the property rights already acquired. This constitutes the principal distinction between grants in consideration of public service and mere privileges for the advancement of private interests. The question as to the right of a state to contract with the citizen is not involved in this case. The state may contract with its citizens with reference to matters of public necessity, and such contracts are as binding as contracts between individuals, the only difference being that, when the state violates its contract, the citizen is without any coercive remedy, unless permission is given by the state to the party injured to seek redress by action for the wrong complained of. The cases cited by counsel bear but little analogy to the question before us.

In the case of Holden against James, 11 Mass., an attempt was made to suspend the statute of limitation in a particular case, so as to take it out of the operation of the general law. The case of Lewis v. Webb, 3 Greenleaf, was where an appeal was authorized by the legislature in a particular case, regardless of the general law; and in Durkee against Zanesville, 28th Wisconsin, the city of Zanesville was exempted from the payment of costs in a proceeding against it by Durkee. This legislation was plainly in violation of the individual rights of others, and a disregard of

the great principle of constitutional equality so earnestly
contended for by counsel, although the decision in each case
was based mainly on the ground that the legislature was
attempting to prescribe to courts of justice the character of
judgments to be rendered, and was an exercise of judicial
power by the legislature in violation of the plain provisions
of the constitution.   In the case of Holden v. James, re-
ported in 11th Mass., already referred to, the general limi-
tation law had been suspended for the benefit of one party,.
so as he might sue, and his adversary prevented from plead-
ing the statute.   In the discussion of that case it was said that
the act was "contrary to natural justice and to the spirit of
the constitution and laws of the state, by giving to one citi-
zen privileges and advantages denied to others;" and so in
all the cases where private rights are invaded or jeopardized
by legislative enactments, the granting of a privilege to one
by way of exemption from the operation of a general law is.
denounced by the courts as subversive of the rule of consti-
tutional equality; and in the discussion of this class of cases
is to be found the language used by the courts that is now
offered as authority for holding the act before us unconstitu-
tional.   Suppose the state, with reference to its own claim
against the citizen, should have suspended the statute of
limitations, or after judgment had authorized an appeal,
when at the time the judgment was rendered the law did
not warrant such a proceeding, can it be maintained that
such legislation would be unconstitutional ?   No right has.
been interfered with in such a case, except that of the state,
and the sovereign power may not only grant the appeal, but
release the debtor from his contract.   (See Calkins v. The
State, 21 Wisconsin; People vs. Frisby, 26 Cal.)

"Privileges (says Cooley in his work on Constitutional Limitation) may be granted to particular individuals when, by doing so, the rights of others are not interfered with," and we can see no constitutional objection to the exercise of such legislative power. It is a mere question of policy, to be determined by the legislator and not the judge.

This character of legislation has been indulged in since the formation of the state constitution, and has met the approval of every department of the state government, and it is now too late to question the exercise of such a power. The right to sue the state may, by special legislation, be given to one, and, at the same time, withheld from another by reason of the general law. It is said, however, that this is expressly authorized by the sixth section of article eight of the constitution, that provides: "The General Assembly may direct, by law, in what manner, and in what courts, suits may be brought against the Commonwealth."

This provision does not authorize a violation of the doctrine of equality under the law, and a permission to one to sue the state, without the same privilege given to all others, is in violation of the fundamental law, if we adopt the theory presented by counsel for the Commonwealth. Suit after suit is permitted to be instituted against the state by the individual citizen, and when not affecting the rights of others, there can be no objection to it. The legislature may, and often does, authorize one under the age of twenty-one years to exercise all the rights of an adult with reference to his estate and business affairs, still, if the views of counsel prevail, all such acts are unconstitutional, because the same right is not granted to every citizen who is not an adult.

The charter of every private corporation, in which the public can have no interest, except such as may arise by

reason of business relations with them, contain[4] grants of
privileges that do not belong to an individual or to similar
corporations.   Such rights are not exclusive, whether granted
to a corporation or to an individual.   They are exceptional
privileges merely, and operate only in the mind of the legis-
lator as advancing the private interests of the party obtaining
the grant, without affecting the rights of others, and such,
legislation is not open to constitutional objection.   The ex-
clusive right to trade in a particular locality, or to purchase
and sell the products of the farm in a particular county, is,
not only in violation of the constitution, but was illegal and
void at common law.   Monopolies are odious, and exclusive
rights, such as those mentioned, cannot be granted.   The
Slaughter-house cases, with dissenting opinions, reported in.
16th Wallace, would have been so held but for the position
assumed that the act was a police regulation, necessary for
the health and comfort of the people.

In the case of Gordon against the Winchester Building
Association, reported in 12th Bush, where the corporation
had been authorized to loan money at ten per cent. interest,
this court held, in an action to recover the money, that the
act authorizing a loan for interest exceeding that permitted.
to be charged by the general law was unconstitutional, and
in the decision of the case regarded it as an exclusive right
conferred on the association that brought it within the-
constitutional inhibition.   Whether the reasoning in that:
case is sound is not material to inquire in this case, as the
court differs upon the question, as it had heretofore differed,
upon a similar question brought up from the Louisville
chancery court.   In the case of Gordon the money was;
loaned at ten per cent. interest, and a premium of $66:
required to be paid for the privilege of borrowing, and the:

case might well have been brought within the rule with reference to such associations upon the question of usury, as settled by this court in the case of Herbert against the Kenton Building Association, reported in 11th Bush. Besides, Gordon was complaining in that case, and this court had at least a party before it who claimed that his constitutional rights would be violated by requiring him to pay this money to the corporation.

Lottery grants are now in existence in this state, and their constitutionality has never been denied, nor can the theory of counsel be maintained that their validity is upheld by reason of or in consideration of public service. There is no more obligation on the state, through its legislature, to maintain a public school at Frankfort than there is to pay the debts of the appellee, and if so, why grant a lottery privilege to the one college, and deny the right to a like college located in a different locality? It is conferring a privilege on one, and withholding it from the other. These are, in fact, mere special privileges acquired under legislative grant for the advancement of private or local interests, that in no manner violates the rights of others; and neither grant can be said to have been made in consideration of public service.

The motive prompting the legislature to make the grant cannot be inquired into by this court. "Plenary power in the legislature for all purposes of civil government is the rule," with uncontrolled authority in making the laws within the limits of the constitution. This court has nothing to do with the moral question involved; if it had, the case could be easily disposed of. "The legislature makes, the executive executes, and the judiciary construes the law." (Cooley on Constitutional Limitation.)

As an additional argument in favor of the constitutionality of the measure, is the practical construction placed upon this section of the bill of rights by the constant legislation of the state conferring special privileges since the formation of the state constitution. When such is the case, says Cooley, "a strong presumption exists that the construction rightly interprets the intention;" and besides, says the same author, where the question of construction, after all the investigation given the subject, remains a matter of doubt, it is clear that the court should abstain from deciding it unconstitutional.

The appellee Whipps was involved in debt, and the legislature, upon his application, granted him the privilege of selling his property by lottery at a single drawing, the proceeds to be applied to the payment of this indebtedness. The extent of the grant, and the power conferred by it, is not questioned. The commonwealth, after making the grant, has indicted him for proceeding to act under it, and is insisting that he shall be fined in a sum not exceeding ten thousand dollars for promoting a lottery. No other party is complaining, and the citizen, by reason of the grant, deprived of no right he had when the grant was made. (Patterson v. Trabue, 3 J. J. M. ; McReynolds v. Smallhouse; Kibby v. Chetwood's adm'r, 4 Mon. ; 8 Bush, Williams v. Sheehan v. Basset's heirs, 6 Mon.; Commonwealth, 27 Miss. ; Commonwealth v. Jackson, 5 Bush.)

Can this penalty be enforced? and is the act unconstitutional? Both questions must be answered in the negative, and the judgment below is therefore affermed, Judges HARGIS and HINES dissenting.

Commonwealth v. Whipps.

DISSENTING OPINION BY JUDGE HINES, IN WHICH JUDGE HARGIS CONCURS:

I am unable to concur in the opinion affirming the judgment of the lower court by an equal division here, and therefore proceed to state my reasons for believing that the judgment should be reversed.

Appellee was indicted for setting up and promoting a lottery, which is denounced by the general law, with a penalty of from $500 to $10,000, and in defense he relied upon an act passed for his benefit, which was held by the court below to be a protection.

That act is entitled "An act for the benefit of W. C. D. Whipps," and authorizes him to run a lottery for the purpose of selling certain real estate and personal property belonging to him, and directs that the proceeds of the drawing be paid to the creditors of Whipps.

The only question I need discuss is, whether this act is not unconstitutional, because forbidden by the first section of the bill of rights.

That section reads as follows: "That all freemen, when they form a social compact, are equal, and that no men or set of men are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services."

It is insisted by counsel for appellee that this provision was aimed at the exclusive exercise of some public function and was intended to prevent the creation of hereditary offices and titles of nobility. This cannot be the proper construction, for the twenty-eighth section of the bill of rights expressly says that the General Assembly "shall not grant any title of nobility or hereditary distinction, nor create any office, the appointment to which shall be for a

longer time than for a term of years." If it had been,
intended to embrace these matters in the first section it was.
idle to include the twenty-eighth section, and to give the
first section any effect, it must be taken to cover something
else.    That the first section does apply to something else
and that it was intended to embrace a case like this was
expressly adjudged by this court in the case of Gordon, &c.,
v. Winchester Building Association, 12 Bush.    At the time
of the passage of the charter of that association the general
law forbade, under a penalty of the forfeiture of all the
interest, the charging of interest at a greater rate than ten,
per centum per annum.    The charter authorized the associa-
tion to charge more than ten per centum, and this court.
declared the act unconstitutional, because it granted to the ·
association an exclusive privilege, without the consideration;
of public service on the part of the association.

The opinion of the court in the case now under considera-
tion does not undertake in express terms to overrule the
Gordon case, but it is said that the opinion in that case
might well have been placed on the grounds upon which the ·
case of Hubert v. Kenton Building Association, 11 Bush,
was based, and counsel say it can be sustained upon the ·
grounds of the opinion in Rowland, Smith & Co. v. Bell's.
ex'r, 5 B. M. · That cannot be correct, because in those ·
cases the question was whether more interest had been
charged than was authorized by the law, while in the Gordon
case there was no question as to what interest was author-
ized to be charged, but the question was, whether the legis-
lature could authorize the association to charge more interest
than others were permitted to charge.    In the two cases.
cited the constitutional question did not and could not arise.
The Gordon case is exactly in point and must be overruled.

if the opinion of the court affirming this case is to stand
as law.   In the Gordon case there was a general law fixing
a rate of interest, and the legislature undertook to exempt
the association from the operation of the general law, and
to authorize it to charge a greater rate of interest than any
one else was allowed to charge.   In this case there is a
general law forbidding any one, under a severe penalty, to
set up or run a lottery, and the act relied upon undertakes
to exempt appellee from the operation of this general law,
and thus confer on him a right enjoyed by no other citi-
zen.   In every essential particular the two cases are anal-
ogous.   The Gordon case is expressly based upon this
provision of the bill of rights.   It is there said: "When
they (the courts) can see that the grantee of an exclusive
privilege has come under no obligation whatever to serve
the public in any matter in any way connected with the
enjoyment of the grant, it is their duty to pronounce the
grant void, as contravening that provision of the bill of
rights which prohibits the granting of exclusive privileges
except in consideration of public services."

It is insisted that this legislation is not more within the
constitutional inhibition than exclusive grants for ferries,
bridges, and turnpikes, and it is sought to justify it upon
the same principle.   That kind of legislation does not sanc-
tion this.   It is essentially different in principle.   The grant-
ing of ferry privileges, the authority to build bridges and to
make turnpikes, is the exercise of a governmental function,
and usually requires the exercise of the power of eminent
domain, and are granted in consideration of certain services
to be performed for the benefit of the public.   Such means
of intercommunication are necessary in order that the citizen
may perform his duty to the government, to facilitate com-

merce and social relations.   The existence of this necessity,
and the existence of the fact that ordinarily these things
cannot be done without the exercise of the right of eminent
domain, renders it the duty of the government to make the
grant, and in doing so it may attach such conditions to the
grant as it may deem proper; but in all such cases there is
a public service or duty to be performed by the grantee.
He furnishes the facilities for communication which existing
necessity made it the duty of the government to do, and is
to that extent acting for the government.

It is upon the same idea of the exercise of a governmental
function and the performance of a service to the public that
all the lottery grants in this state have been sustained.   In
every instance where such grants have passed under review
in the courts, and have been approved, they have been
created for the ostensible purpose of establishing schools,
libraries, or wharves for the public convenience.   All these
things, when carried out, are public services, and result in
the performance of rights and duties which devolve upon
the government.   The furnishing of educational facilities,
as furnishing means of communication by which the citizen
may perform his duties to the state, is the exercise of gov-
ernmental functions and duties which may properly be del-
egated to any person or persons to be performed for the
government, and upon such conditions as the government
may prescribe.   It is upon this principle that the grant to
the Green and Barren River Company, in Smallhouse v.
Reymonds, 8 Bush, was sustained.   The company performed
a public service by keeping the public works on the rivers
in repair, and thus furnishing that facility for commerce
which it was the right and the duty of the state to do.

Upon a different principle also rests legislation in regard to the sale of the estates of infants and others under legal disability.   It is upon the theory that the state is the guardian of such persons, and of necessity must think and act for them for their protection either immediately by act of the legislature or mediately through the courts by legislative authority conferred upon the courts.   In this state the legislature, by section 32 of article 2 of the constitution, is expressly forbidden to do these things by direct legislation, but is required to do them through the courts under general laws to be passed for that purpose.

It is further suggested in the opinion that an act of the legislature authorizing suit to be brought by an individual against the state is the granting of an exclusive privilege. Article 8, section 6, of the constitution provides that "the general assembly may direct, by law, in what manner, and in what courts, suits may be brought against the commonwealth."   But for this provision of the constitution, such a grant, in my opinion, would clearly be the creation of an exclusive privilege, which is forbidden by the first section of the bill of rights.   The effect, however, is to allow the legislature to confer the privilege of suing, and as there is no limit prescribed, and no restriction placed upon the legislature as to the character of law that may be passed under this provision, it is reasonable to presume that it should be left to the legislative department in each case to determine whether the right of action should be granted.   There is nothing in the constitution from which it could be determined that it was the intention to confine the legislative action to the passage of a general law authorizing suits against the commonwealth, because if such had been the intention it was only necessary to say that any citizen might

sue the commonwealth, and no action of the legislature would have been necessary. It was evidently intended to leave the question within the discretion of the legislature.

The theory of all free governments, whether under a written constitution or not, is equal rights, equal privileges, and equal capacities, to every citizen in the acquisition of property, and in the preservation of life, liberty, and property. This legislation violates that spirit as well as the very letter of the constitution, and the construction contended for by appellee, when carried to its logical and legitimate result, would cause incalculable harm. For illustration: there is a general law against gaming. Suppose the legislature should attempt to pass a law allowing appellee to deal faro, to gamble at cards, or in any other way, and at any place in the state of Kentucky, when all other persons are forbidden by the general law to do these things. Or suppose the attempt was made to authorize him to run a lottery for his private gain in every town and village in the state, while the general law forbids any one else to do the same thing. Is it not perfectly clear that the courts would not hesitate to declare such legislation invalid? and yet the same reason that would support the act in favor of appellee would support such legislation. The question presented is not one as to the extent of the injury by legislation, but it is an inquiry as to legislative power—not of degree but of kind.

If this section of the constitution does not apply to this class of legislation, there is nothing in the letter of the constitution to prevent the legislature from creating any character of monopoly for the aggrandizement of a private individual. Suppose a general law should be passed forbidding the sale in the state of any given commodity, and an act should be subsequently passed authorizing a particular person, for his

·personal good, to trade in this commodity.   Such a grant
would certainly be void, and I think under the express letter
of the constitution; but if not void for that reason, it would
be void because an arbitrary and tyrannical act not within
·the scope of legislative authority.

It is not true that the courts cannot declare an act of
·the legislature unconstitutional or void unless ·expressly for-
·bidden by the letter of the constitution.   The constitution
·divides the government into three departments—legislative,
·executive, and judicial—and provides that neither of these
departments shall exercise any power properly belonging to
·either of the others.   The constitution does not undertake·
:to define what the powers or duties of these several depart-
ments are, but leaves them to be determined by the max-
·ims of magna charta and the common law, so·that whatever
act of the legislative department (which we are alone con-
·sidering) that is not so approved is outside of the pale of
legislation, and absolutely void.   For instance, the legislature
·cannot authorize the property of one individual to be·taken
·and transferred to another; it cannot make one an arbiter in
·his own case, nor can it, under the guise of taxation, confis-
·cate the property of the citizen.   Not because.any of these
·things are expressly forbidden in the constitution, but be-
·cause it is outside of the delegated authority, which is only
·legislative, and they are, therefore, arbitrary and despotic,
·belonging to no department of any· free government.

It appears to me that the act relied upon is likewise out-
·side the limits of legislation, and for that reason· void.
There is no special obligation on the state to look to the
personal welfare of appellee more than to that of any other
citizen.   He performs no public service.   He exercises no
delegated governmental function, nor is he a ward· of the

state by reason of legal incapacity, nor is there anything to indicate that appellee is a charge upon the state by reason of physical disability.

It is insisted that the commonwealth cannot question its own grant of a franchise; that it is necessary in every instance that some individual complain of an injury to himself before the courts can entertain jurisdiction to inquire into the constitutionality of an act of the legislature. This assumption is the result of the failure to recognize that the legislative branch of the government, like the executive and the judiciary, is limited in its operation, and that any act passed outside of this limit is not legislative, but is absolutely a void act, as declared by the last section of the bill of rights. The legislature is not the state, and its act is not the act of the state, except when done within the bounds prescribed by the constitution. A void act confers neither power nor immunity upon any one. It is as if it had not been passed. In this case appellee must be held to have known the law, and therefore that the act under which he attempted to justify was void. The appearance of the commonwealth in court is not the appearance of the legislative branch alone, but it is as the representative of the people, and when the whole body of the people are affected, the commonwealth, through its constituted legal representative, may appear to question any act of any branch of the government.

In England even the Attorney General, in the name of the Crown, may appear in court as the representative of the King to question the validity of a patent granted by the King himself, because the whole body of the people are interested that no illegal grant shall exist.

The judgment of the court below should be reversed.