# LOUISVILLE GAS COMPANY *v.* CITIZENS' GAS COMPANY.

IN ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

Submitted November 2, 1885.—Decided December 7, 1885.

The legislative grant of an exclusive right to supply gas to a municipality and its inhabitants, by means of pipes and mains laid through the public streets, and upon condition of the performance of the service by the grantee, is a grant of a franchise vested in the State, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the Constitution of the United States against State legislation to impair it.

In granting the exclusive franchise to supply gas to a municipality, and its inhabitants, a State legislature does not part with the police power and duty of protecting the public health, the public morals, and the public safety, as one or the other may be involved in the exercise of that franchise by the grantee.

A legislative grant of an exclusive right to supply gas to a municipality and its inhabitants by means of pipes and mains laid through the public streets, and upon condition of the performance of the service by the grantee, is no infringement of that clause in the Bill of Rights of Kentucky, which declares "That all freemen, when they form a social compact, are equal and that no man, or set of men, are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services."

On February 14, 1856, the legislature of Kentucky enacted "That all charters and grants of and to corporations or amendments thereof, shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent be therein expressed.". By an act passed January 22, 1869, amending the charter of a gas company which was subject to that provision in the act of 1856, it was enacted "That said gas company shall have the exclusive privilege of erecting and establishing gas works in the City of Louisville during the continuance of this charter, and of vending coal gas lights, and supplying the city and citizens with gas by means of public works," &c. *Held*, That the latter act contained a clear expression of the legislative intent, that the company should continue to enjoy the franchises then possessed by it for the term named in that act without being subject to have its charter in that respect amended or repealed at the will of the legislature.

This was a writ of error to the highest court of Kentucky. The general question to be determined was whether certain legislation of that Commonwealth was in conflict with the clause of the National Constitution which forbids a State to pass any law impairing the obligation of contracts. The appellant, the Louisville Gas Company, contended that its charter, granting certain exclusive rights and privileges, constituted, within the meaning of that Constitution, a contract, the obligation of which had been impaired by the charter subsequently granted to the appellee, the Citizens' Gas-Light Company. The Court of Appeals of Kentucky sustained as constitutional the legislation under the authority of which the latter company was exercising the rights, privileges, and franchises conferred by its charter.

By an act of the General Assembly of Kentucky, approved February 15, 1838, Sess. Acts. 1837-8, p. 206, the Louisville Gas and Water Company was created a corporation to continue for the term of thirty years from January 1, 1839. It was made its duty, within three years after its organization, to establish in Louisville a gas manufactory of sufficient extent and capacity to supply that city and its people with such public and private lights as might, from time to time, be required; and, within five years after the establishment of its gas works, to erect and establish water works sufficient to supply the city with water for the extinguishment of fires, for the cleansing and sprinkling of streets and alleys, and for all manufacturing

and domestic purposes; to which end it might lay down and extend pipes through any of the streets and alleys of the city, the company being responsible to the city for any damages resulting therefrom. The act imposed a limit upon the price to be charged for gas lights used by the city; and gave the latter the right to subscribe for four thousand shares in the company, payment for one-half of which could be made in city coupon bonds for $200,000, redeemable at any time within three years after the expiration of the company's charter. It was made a fundamental condition that, upon the termination of the company's charter, the city at its election could take the gas and water works at a fair estimate of what they would cost and be worth at that time, to be ascertained by the judgment of competent engineers, selected by the parties, or, in case they disagreed, by the Louisville Chancery Court.

Under this charter the company proceeded at once to erect gas works, including suitable buildings and machinery. It supplied itself with all necessary apparatus, laid down mains and pipes, and erected lamp posts, for the purpose of lighting the streets. It supplied gas for the public buildings, and for street lights, as well as for domestic purposes. And it continued so to do during the term of its original charter.

By an act passed in 1842, the authority to erect water works was withdrawn by the legislature.

By an act, entitled "An Act to extend the charter of the Louisville Gas Company," approved January 30, 1867, a new charter was granted, to take effect January 1, 1869, and to continue in force for twenty years from that date, unless the city of Louisville should exercise its privilege of purchasing the works established under the authority of the original charter. That act created a corporation by the name of the Louisville Gas Company, with a capital stock of $1,500,000. It provided, among other things, that such stock should consist, "first, of the stock of the present Louisville Gas Company, on the 31st of December, 1868, at par value; secondly, of the contingent fund and undivided profits that the company may own at the expiration of the present charter, said fund to be capitalized *pro rata* for the benefit of the present stockholders, except

fractional shares which shall be paid in cash; and, thirdly, new stock may be issued and sold by the new company, when required, to the extent of the capital stock, the sales to be made at public auction, after ten days' notice in the city papers; should said stock be sold above its par value, such excess shall not be capitalized or divided among the stockholders, but be employed in the first extensions made by the company after the sale of said stock;" that the business of the company should be to make and furnish gas to the city of Louisville and its residents; that within two years after its charter took effect, it should extend gas distribution to Portland, lay down mains, and erect street lights in certain named streets in that part of the city; should extend mains wherever the private and public lights would pay eight per cent. on the cost of extension, until its entire capital was absorbed in the gas works and extensions—continuing the use of the pipes and conductors already laid down, and, with the consent of the city council, extending the pipes and conductors through other streets and alleys of the city. It was, also, provided that the company should put up gas lamps at certain distances apart on the streets where there were mains, supply the same with gas, and light and extinguish the same, and charge the city only the actual cost thereof—such charges not to exceed the average charges for similar work or service in the cities of Philadelphia, Baltimore, Cincinnati, Chicago, and St. Louis, and the charges against other consumers not to be greater than the average price in said cities; that the stockholders, exclusive of the city of Louisville, should elect five directors, while the general council of the city should elect four; that the city might, upon the termination of the charter, purchase the gas works at a fair estimate of what they would be then worth; and that the charter should be valid and in force when accepted by those who held the majority of stock in the old company, all of whose property should belong to the new company.

When the act of 1867 was passed, the city owned 4985 shares of the stock of the old company. All the gas with which its streets were then lighted, or which was furnished to its people, was supplied by that company.

On the 22d of January, 1869, an act was passed amending that of January 30, 1867. Its preamble recited that the city of Louisville and the stockholders of the old company had accepted the extended charter, and desired that the amendments embodied in that act should become part of that charter. The amended charter repealed so much of the act of 1867 as allowed a profit of eight per cent. on the cost of extensions, and, among other things, provided that the company should extend its main pipes whenever the public and private lights, immediately arising from said extension, would pay seven per cent. profit on the cost thereof; that the company should put lamp posts, fixtures, &c., along the street mains, as they might be extended, at a distance apart of about two hundred feet; should keep the lamps in order, furnish gas, and light and extinguish the same, each light to have an illuminating power of about twelve sperm candles; should furnish public lights to the city at actual cost, which should in no event exceed annually $35 per lamp; that the charges to private consumers should be so graded that the company's profits should not exceed twelve per cent. per annum on the par value of the stock, ten per cent. of which might be drawn by stockholders in semi-annual dividends, and the remaining two per cent. to be laid out for extensions, not to be capitalized except at the end of five years. The fifth and sixth sections of the last act were as follows:

" 5. That said gas company shall have the exclusive privilege of erecting and establishing gas-works in the city of Louisville during the continuation of this charter, and of vending coal gaslights, and supplying the city and citizens with gas by means of public works: *Provided,* however, this shall not interfere with the right of any one to erect, or cause to be erected, gasworks on their own premises, for supplying themselves with light.

" 6. That no alteration or amendment to the charter of the gas company shall be made without the concurrence of the city council and the directors of the gas company."

By an act approved March 21, 1872, the Citizens' Gas-Light Company of Louisville was incorporated, for the term of fifty years, with authority to make, sell, and distribute gas for the

purpose of lighting public and private buildings, streets, lanes, alleys, parks, and other public places in that city and its vicinity. It was authorized, the general council consenting, to use the streets and other public ways of the city for the purpose of laying gas-pipes, subject to such regulations as the city council might make for the protection of the lives, property, and health of citizens. That body did so consent by ordinance passed December 13, 1877.

The Louisville Gas Company having claimed that the foregoing section of the act of January 22, 1869, granting the exclusive privileges therein defined, constituted a contract, the obligation of which was impaired by the charter of the plaintiff, and that the latter's charter was therefore void, the present suit was brought by the Citizens' Gas Light Company in the Louisville Chancery Court for the purpose of obtaining a perpetual injunction against the assertion of any such exclusive privileges, and against any interference with the plaintiff's rights as defined in its charter. Among the rights asserted by the latter under its charter was "to make, sell, and supply coal gas for lighting the public buildings and other places, public and private," in Louisville and the adjoining localities, by means of pipes laid in the public ways and streets. The court of original jurisdiction dismissed the suit. Upon appeal to the Court of Appeals, the decree was reversed, with directions to issue a perpetual injunction restraining the Louisville Gas Company from claiming and exercising the exclusive right of manufacturing and supplying gas to the city of Louisville and its inhabitants. This writ of error was sued out to review that judgment.

*Mr. John G. Carlisle, Mr. Thomas F. Hargis, Mr. John K. Goodloe,* and *Mr. Alexander P. Humphrey* for plaintiff in error.

*Mr. John Mason Brown, Mr. George M. Davie* and *Mr. William Lindsay* for defendant in error.

I. The grant to the old company was an exclusive privilege to make and sell gas. No exclusive privilege of laying pipes

in the streets was granted. This was unconstitutional, unless it can be sustained as an exercise of the police power. It is not denied that there are franchises which are the prerogative of the State, such as transportation by railroads, ferries, &c. These exclusive privileges a State may delegate to individuals. *Olcott* v. *Supervisors*, 16 Wall. 678, 693; *Commonwealth* v. *Bacon*, 13 Bush, 210; *State* v. *Boston, Concord and Montreal Railroad Co.*, 25 Vt. 433; *Railroad* v. *Campbell*, 44 Cal. 89; *Lexington & Ohio Railroad Co.* v. *Applegate*, 8 Dana, 289; but such exclusive privileges do not extend to the transaction of ordinary business, of which class is the making and selling of gas. Municipal corporations are not obliged to light streets, and are not liable for failing to light them. *Randall* v. *Eastern Railroad Co.*, 106 Mass. 276; *Macomber* v. *Taunton*, 100 Mass. 255; *Sparhawk* v. *Salem*, 1 Allen, 30; *Norwich Gas-Light Co.* v. *Norwich City Gas-Light Co.*, 25 Conn. 19; *Western Savings Fund* v. *Philadelphia*, 31 Penn. St. 175; *New Jersey Gas Co.* v. *Dwight*, 2 Stewart (29 N. J. Eq.) 242; And it is well settled in England that no legislative grant is necessary for making and selling gas. *Attorney General* v. *Cambridge Gas Co.*, L. R. 4 Ch. 71, 86; *Hoddeson Gas Co.* v. *Hazelwood*, 6 C. B. N. S. 239, 249; *Attorney General* v. *Gas Light & Coke Co.*, 7 Ch. Div. 217. See also *Commonwealth* v. *Lowell Gas-Light Co.*, 12 Allen, 75. It follows that a legislative grant of this kind has no meaning except to prohibit others from entering into a lawful business. This is, practically, a denial of equal privileges, and a depriving of property and liberty, within the meaning of the Constitution. For no legislature can allow one person and prohibit another from engaging in a lawful pursuit, unless it be one which falls within its police power and supervision. *In the matter of Jacobs*, 33 Hun (40 N. Y. Supreme Ct.), 374, 378; *S. C.*, on appeal, 98 N. Y. 98; *State* v. *Addington*, 77 Missouri, 110; *Commonwealth* v. *Bacon*, and *Norwich Gas-Light Co.* v. *Norwich City Gas-Light Co.*, above cited; *Live Stock Co.* v. *Crescent City Co.*, 1 Abb. U. S. 388, 398; *Arrowsmith* v. *Burlingem*, 4 McLean 489, 497; *Bertholf* v. *O'Reilly* 74 N. Y. 509, 515. The only case to the contrary is *State* v *Milwaukee Gas Co.*, 29 Wisc. 454.

II. If the grant was made under the police power, it was subject to repeal in whole or in part as subsequent legislatures might think the public good required. (1). The grant was an exclusive privilege of making and selling gas. There being no words of exclusiveness as to the right to use the streets, no exclusive right for that purpose was granted. *People* v. *Bowen*, 30 Barb. 24, 38. See also *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420 ; *Lehigh Water Co's appeal*, 102 Penn. St. 515, 527 ; *Holyoke Co.* v. *Lyman*, 15 Wall. 500, 512; *Fertilizer Co.* v. *Hyde Park*, 659, 666 ; *Wright* v. *Nagle*, 101 U. S. 791, 796 ; *State* v. *Cincinnati Gas-Light & Coke Co.*, 18 Ohio St. 292 ; *Norwich Gas Co.* case, cited above. What the police power of the State is may be gathered from the language of this court in *License Cases*, 5 How. 504, at page 583; *Slaughter-House Cases*, 16 Wall. 36, at page 62; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746, at page 750 and page 752 ; *Barbier* v. *Connolly*, 113 U. S. 27, at page 31; *Soon Hing* v. *Crowley*, 113 U. S. 703. A grant of a privilege to manufacture coal-gas fairly comes within its exercise for the purpose of protecting health and morals. This gas is a deadly poison and a dangerous explosive. Its use requires the disturbance of the streets, with accompanying malarious exhalations. It furnishes a superior light, which is a powerful moral agent, and an aid in the prevention of crime and detection of criminals. See *Harlem Gas Co.* v. *New York*, 33 N. Y. 309, 327; *Wheeler* v. *Philadelphia*, 77 Penn. St. 338, 354; *New Orleans* v. *Clark*, 95 U. S. 644, 652; *State* v. *Columbus Gas Co.*, 34 Ohio St. 572, 581; *State* v. *Cincinnati Gas-Light Co.*, cited above; *Williams* v. *Mutual Gas Co.*, 52 Mich. 499, 502 ; *Broadbent* v. *Imperial Gas Co.*, 7 De G. McN. & G. 436, 467; *Cleveland* v. *Citizens' Gas-Light Co.*, 5 C. E. Green (20 N. J. Eq.), 201. If we look to analogies, we find that exclusive grants in other lines of business, that may be injurious, if improperly conducted, are based upon the police power. Powder magazines: *New Orleans* v. *Hoyle*, 23 La. Ann. 740 ; growing rice : *Green* v. *Savannah*, 6 Geo. 1 ; selling liquors : *In re Ruth*, 32 Iowa, 250 ; *Columbus* v. *Cutcomb*, 61 Iowa, 672 ; coal-oil : *Patterson* v. *Kentucky*, 97 U. S. 501 ; oleomargarine : *Hawthorne* v. *People*, 109 Ill. 302 ;

the use of steam power on streets : *Railroad Co.* v. *Richmond,* 96 U. S. 521; water: *Water Works Co.* v. *Sugar Works Co.,* 35 La. Ann. 1114; *New Orleans Water Works Co.* v. *St. Tammany Water Works Co.,* 14 Fed. Rep. 194; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347; slaughter-houses: *Slaughter-House Cases,* above cited; school books: *Bancroft* v. *Thayer,* 5 Sawyer, 502. (2). The grant, being an exercise of the police power, could be repealed at the will of the legislature. *Stone* v. *Mississippi,* 101 U. S. 814; *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park, Butchers' Union Co.* v. *Crescent City Co., New Orleans* v. *Hoyle, New Orleans Water Co.* v. *St. Tammany Water Co.,* and *Columbus* v. *Cutcomb,* all cited above; *Gale* v. *Kalamazoo,* 23 Mich. 344; *Colder* v. *Kurby,* 5 Gray, 597; *Commonwealth* v. *Intoxicating Liquors,* 115 Mass. 153; *Johnson* v. *Crow,* 87 Penn. St. 184, 187.

III. In any event the exclusive privilege, even if valid, could be repealed under the general power reserved to the legislature to amend, alter, or repeal all legislative grants of franchises. *Cumberland & Ohio Railroad* v. *Barren Co.,* 10 Bush, 604, 608–9; *Greenwood* v. *Freight Co.,* 105 U. S. 13, 20; *Thornhill* v. *Hall,* 2 Cl. & Fin. 22, 36; *Swift* v. *Newport,* 7 Bush, 37.

Counsel also argued other points not referred to in the opinion of the court in this case or the case of the New Orleans Gas Co. referred to by the court:

MR. JUSTICE HARLAN delivered the opinion of the court. After stating the facts in the language reported above, he continued :

Two of the judges of the State court held that the clause of the Bill of Rights of Kentucky, which declares that "all freemen, when they form a social compact, are equal, and that no man or set of men are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services," Const. Kentucky, 1799, Art. 10, § 1; 1850, Art. 13, § 1, forbade the General Assembly of that Commonwealth to grant to a private corporation the exclusive privilege of manufacturing and distributing gas, for public and

private use, in the city of Louisville, by means of pipes and mains laid under the streets and other public ways of that municipality. The other judges were of opinion that that clause did not prohibit a grant by the State to a private corporation, whereby certain privileges were conferred upon the latter in consideration of its discharging a public duty, or of rendering a public service.; that the municipality of Louisville, being a part of the State government, there was a public necessity for gas-lights upon its streets and in its public buildings, almost as urgent as the establishment of the streets themselves; that the services thus to be performed by the corporation were, in the judgment of the legislative department, an adequate consideration for the grant to it of exclusive privileges; and, consequently, that the grant was a contract, the rights of the parties under it to be determined by the rules applicable to contracts between individuals.

While the judgment below, in view of the equal division in opinion of the judges of the State court, does not rest upon any final determination of this question by that tribunal, it cannot be ignored by us; for, at the threshold of all cases of this kind, this court must ascertain whether there is any such agreement on the part of the State as constitutes a contract, within the meaning of the Constitution of the United States. If the services which the gas company undertook to perform, in consideration of the exclusive privileges granted to it, were public services, within the meaning of the Bill of Rights of Kentucky, then the grant of such privileges was not forbidden by the State Constitution. In *New Orleans Gas-Light Co.* v. *Louisiana Light Co.*, just decided, *ante* 650, it was held that the supplying of gas to a city and its inhabitants, by means of pipes and mains laid under its public ways, was a franchise belonging to the State, and that the services performed, as the consideration for the grant of such a franchise, are of a public nature. Such a business is not like that of an ordinary corporation engaged in the manufacture of articles that may be quite as indispensable to some persons as are gas-lights. The former articles may be supplied by individual effort, and with their supply the government has no such concern that it can grant

an exclusive right to engage in their manufacture and sale. But as the distribution of gas in thickly populated districts is, for the reasons stated in the other case, a matter of which the public may assume control, services rendered in supplying it for public and private use constitute, in our opinion, such public services as, under the Constitution of Kentucky, authorized the legislature to grant to the defendant the exclusive privileges in question. This conclusion is justified, we think, by the decisions of the Court of Appeals of that State. In *O'Hara* v. *Lexington & Ohio Railroad Co.*, 1 Dana, 232, 233, the point was made, that an inquisition for the assessment of damages for the taking of land by a railroad corporation was void upon certain grounds, one of which was that the company's charter granted exclusive privileges, without any consideration of public services. Chief Justice Robertson, speaking for the court, said, that, in the true sense of the Constitution, no exclusive privileges were granted to the corporation, observing that "if the charter be on that ground unconstitutional, it would be difficult to maintain the validity of any statute for incorporating any bridge company, or any bank, or even for granting any ferry franchise."

But the principles announced in *Gordon* v. *Winchester*, 12 Bush, 110, 114, seem more directly applicable to the present case. Judge Cofer, speaking for the whole court, after observing that there were unquestionably cases in which the State may, without violating the Constitution, grant privileges to specified individuals, which from the nature of the case could not be enjoyed by all, and in respect of which the State could designate the grantee, said: "But in all such cases the person, whether natural or artificial, to whom the privilege is granted, is bound, upon accepting it, to render to the public that service, the performance of which was the inducement to the grant; and it is because of such obligation to render service to the public that the legislature has power to make the grant." In illustration of this principle he proceeds to say: "Permission to keep a tavern or a ferry, to erect a toll-bridge over a stream where it is crossed by a public highway, to build a mill-

dam across a navigable stream, and the like, are special privi-leges, and, being matters in which the public have an interest, may be granted by the legislature to individuals or corpora-tions; but the grantee, upon accepting the grant, at once be-comes bound to render that service, to secure which the grant was made; and such obligation, on the part of the grantee, is just as necessary to the validity of a legislative grant of an exclusive privilege, as a consideration, either good or valuable, is to the validity of an ordinary contract. Whenever, by ac-cepting such privilege, the grantee becomes bound, by an ex-press or implied undertaking, to render service to the public, such undertaking will uphold the grant, no matter how inade-quate it may be; for, the legislature being vested with power to make grants of that character, when the public convenience demands it, the legislative judgment is conclusive, both as to the necessity for making the grant and the amount of service to be rendered in consideration therefor, and the courts have no power to interfere, however inadequate the consideration or un-reasonable the grant may appear to them to be. But when they can see that the grantee of an exclusive privilege has come under no obligation whatever to serve the public in any matter in any way connected with the enjoyment of the grant, it is their duty to pronounce the grant void, as contravening that provision of the Bill of Rights which prohibits the granting of exclusive privileges, except in consideration of public services." These observations were made in a case where it was held that a statute giving a building association the right to receive a greater rate of interest than was allowed by the general law was unconstitutional, in that it conferred exclusive privileges not in consideration of any public services to be performed.

In *Commonwealth* v. *Bacon*, 13 Bush, 210, 212, the question was as to the constitutionality of an act giving a strictly private corporation, which owed no duty to the public, a monopoly of an ordinary business in which every citizen was entitled to engage upon terms of equality. Its validity was attempted to be sustained on the same principle upon which the grant of ferry privileges was upheld. But the act was held to be unconstitutional, the court, among other things, saying: "Fer-

ries are parts of highways, and the government may perform its duty in establishing and maintaining them through the agency of private individuals or corporations, and such agencies are representatives of government, and perform for it a part of its functions. And in consideration of the service thus performed for the public, the government may prohibit altogether persons from keeping ferries and competing with those it has licensed. The establishment of public highways being a function of government, no person has a right to establish such a highway without the consent of government; and hence, in prohibiting unlicensed persons from keeping a ferry, the government does not invade the right of even those who own the soil on both sides of the stream."

In the later case of *Commonwealth* v. *Whipps*, 80 Ky. 269, 272, where the validity of a statute of Kentucky authorizing a particular person to dispose of his property by lottery was assailed as a violation of the before mentioned clause in the Bill of Rights, Pryor, J. (Chief Justice Lewis concurring), said: "This constitutional inhibition was intended to prevent the exercise of some public function, or an exclusive privilege affecting the interests and rights of the public generally, when not in consideration of public service, and, if made to apply to the exercise of mere private rights or special privileges, it nullifies almost innumerable legislative enactments that are to be found in our private statutes, sanctioned, in many instances, by every department of the State government."

The precise question here presented seems not to have been directly adjudicated by the highest court of the State. But, as the exclusive privileges granted to the Louisville Gas Company affected the rights and interests of the public generally, and related to matters of which the public might assume control, we are not prepared to say that the grant was not in consideration of public services, within the meaning of the Constitution of Kentucky. We perceive nothing in the language of that instrument, or in the decisions of the highest court of that Commonwealth, that would justify us in holding that her legislature in granting the exclusive privileges in question exceeded its authority.

2. On behalf of the Citizens' Gas-Light Company it is contended that the charter of the Louisville Gas Company, granted January 30, 1867, and amended by the act of January 22, 1869, was at all times subject to alteration or repeal at the pleasure of the legislature. Assuming that the act of 1867 was not a prolongation of the corporate existence of the original Louisville Gas Company, but created a new corporation by the same name, it is clear that such charter was granted subject to the provisions of a general statute of Kentucky, enacted on the 14th of February, 1856, entitled "An act reserving power to amend or repeal charters, and other laws." That statute is as follows:

"§ 1. That all charters and grants of or to corporations or amendments thereof, and all other statutes, shall be subject to amendment or·repeal at the will of the legislature, unless a contrary intent be therein plainly expressed: *Provided*, That whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested.

"§ 2. That when any corporation shall expire or be dissolved, or its corporate rights and privileges shall cease by reason of a repeal of its charter or otherwise, and no different provision is made by law, all its works and property, and all debts payable to it, shall be subject to the payment of debts owing by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of settlement and distribution as aforesaid.

"§ 3. That the provisions of this act shall only apply to charters and acts of incorporation to be granted hereafter; and that this act shall take effect from its passage."

The language of this statute is too plain to need interpretation. It formed a part of the charter of the new Louisville Gas Company when incorporated in 1867, and the right of the legislature, by a subsequent act, passed in 1872, to incorporate another gas company to manufacture and distribute gas in Louisville, by means of pipes laid, at its own cost, in the public ways of that city, so far from impairing the obligation of de-

fendant's contract with the State, was authorized by its reserved power of amendment or repeal, unless it be that the act of January 22, 1869, "plainly expressed" the intent that the charter of the new Louisville Gas Company should not be subject to amendment or repeal at the mere will of the legislature. The judges of the State court all concurred in the opinion that no such intent was plainly expressed. As this question is at the very foundation of the inquiry whether the defendant had a valid contract with the State, the obligation of which has been impaired by subsequent legislation, we cannot avoid its determination. Whether an alleged contract arises from State legislation, or by agreement with the agents of a State, by its authority, or by stipulations between individuals exclusively, we are obliged, upon our own judgment and independently of the adjudication of the State court, to decide whether there exists a contract within the protection of the Constitution of the United States. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Wright* v. *Nagle*, 101 U. S. 791, 794; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 254, 257. After carefully considering the grounds upon which the State court rests its conclusion, we have felt constrained to reach a different result. We are of opinion that the act of 1869 plainly expresses the intention that the company should enjoy the rights, privileges, and franchises conferred by the act of 1867, as modified and extended by that of 1869, without its charter being subject to amendment or repeal at the will of the legislature. In ascertaining the legislative intent, we attach no consequence to the negotiations between the Louisville Gas Company and the city council of Louisville as to the provisions to be embodied in an amended charter giving the company exclusive privileges after January 1, 1869 ; for, the words of the act of 1869 being, in our opinion, clear and unambiguous, effect must be given to them according to their ordinary signification. The clause in that act declaring that "no alteration or amendment to the charter of the gas company shall be made without the concurrence of the city council and the directors of the gas company," plainly expresses as we think, the intention that the company's charter should not be

amended or repealed "at the will of the legislature." When the legislature declared that there shall be no alteration or amendment without the concurrence of the city council and the directors of the company, it must have intended to waive, with respect to that company, her absolute power reserved by the act of 1856, of amending or repealing charters of incorporations thereafter granted. The language used is wholly inconsistent with any other purpose than to withdraw its charter from the operation of that act, so far as to make the right of amendment or repeal subject, not to the mere will of the legislature, but, in the first instance, to the concurrence of the city council and the directors of the gas company. If there can be no amendment or repeal without the concurrence of the city council and the directors of the company, then it cannot be said that such amendment or repeal depends entirely upon the will of the legislature, as declared in the act of 1856. It was as if the legislature had said: "As the municipal government of Louisville and the company are agreed, the latter may enjoy the rights, privileges, and franchises granted by its charter for the whole term of twenty years, unless before the expiration of that period the city council and its directors concur in asking alterations or amendments, which will be made if, in the judgment of the general assembly, the public interests will be thereby promoted."

3. But it is argued that, as the defendant's charter of 1867 conferred upon it no exclusive privileges, the granting of such privileges in the act of 1869 was without consideration, and is to be deemed a mere gratuity. To this it is sufficient to answer that, apart from the public services to be performed, the obligations of the company were enlarged by the act of 1869, and its rights under that of 1867 materially lessened and burdened in the following particulars: The amended charter limited the profits of the company to twelve per cent. per annum on the par value of its stock, two per cent. of which were required to be used for extensions and not to be capitalized, except at the end of each five years, while, under the original charter, the only limitation upon the prices to be charged private consumers was that they should not exceed the average

charges in Philadelphia, Baltimore, Cincinnati, Chicago, and St. Louis; the amended charter limited the amount to be annually charged the city per lamp to $35, no matter what its actual cost was, while, under the original charter, the company was entitled to charge the city for the actual cost of supplying, lighting and extinguishing, lamps, not, however, exceeding the average charges in the before-mentioned cities; and by the amended charter, the company was required to extend its mains when its income from lights would amount to seven per cent. on such extensions, while under the original charter such extensions were not required unless its income therefrom would pay eight per cent. These concessions upon the part of the company seem to be of a substantial character, and constituted a sufficient consideration to uphold the grant of exclusive privileges. If the consideration appears now to be inadequate, upon a money basis, that was a matter for legislative determination, behind which the courts should not attempt to go.

4. These preliminary matters being disposed of, and without referring to some matters discussed by counsel but not fairly arising on the pleadings, or in any evidence in the cause, it is clear that, upon the main issue, this case is determined by the principles announced in *New Orleans Gas-Light Co.* v. *The Louisiana Light Co.*, just decided. For the reasons there stated, and which need not be repeated here, we are of opinion that the grant to the Louisville Gas Company, by the act of January 22, 1869, amendatory of the act of January 30, 1867, of the exclusive privilege of erecting and establishing gas-works in the city of Louisville during the continuance of its charter, and of vending coal gas-lights, and supplying that municipality and its people with gas by means of public works, that is, by means of pipes, mains, and conduits placed in and under its streets and public ways, constitutes a contract between the State and that company, the obligation of which was impaired by the charter of the Citizens' Gas-Light Company. The charter of the latter company is, therefore, inoperative, in respect of these matters, until, at least, the exclusive privileges granted the Louisville Gas Company cease,

according to the provisions of its charter. As the object of the plaintiff's suit was to obtain a decree enjoining the defendant from claiming and exercising the exclusive privileges so granted to it, the judgment of the Louisville Chancery Court dismissing the bill should have been affirmed by the Court of Appeals.

*The judgment of the latter court, reversing that of the court of original jurisdiction, is itself reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*