## Homestead St. Ry. *v.* Pittsburg & Homestead Electric St. Ry., Appellant.

## Long et al., Supervisors, Appellants, *v.* Homestead St. Ry.

[Marked to be reported.]

*Street railways—Occupation of highways—Act of May 14, 1889.*

Under the act of May 14, 1889, P. L. 211, two street railway companies cannot be authorized to lay their tracks upon the same highway.

The statutory power of incorporation can only be executed in favor of a company which will construct and operate a railway on a street or highway upon which "no track is laid or authorized to be laid," under any existing charter.

The time of which the act speaks is the time of proposed incorporation, and the act does not refer merely to charters existing at the date of the passage of the act.

*Street railways—Consent of local authorities—Consent prior to incorporation—Act of May 14, 1889.*

The source of authority to lay a track upon a highway is not the municipality, but the commonwealth, through its enabling legislation. The municipal consent is an incident, but necessarily of subsequent occurrence. So far as incorporations are concerned the authorization to lay the track is complete when the charter is obtained.

Defendant, a street railway company incorporated under the act of May 14, 1889, P. L. 211, obtained its charter Nov. 16th, and the municipal consent Dec. 19th. Plaintiff, also a street railway company, incorporated under the act of May 14, 1889, obtained its charter on Nov. 29th, and the municipal consent was granted Nov. 20th, prior to its incorporation. *Held* (1) That defendant was legally authorized to lay a track on the disputed highway at the time of plaintiff's application for a charter. (2) That defendant obtained the municipal consent to lay the track within a reasonable time after the grant of its charter, and therefore consummated its legal right by the speedy acquisition of the municipal-consent. (3) That plaintiff was subject to the prohibition of the statute at the time of application for a charter, and could not acquire a right to occupy the disputed highway with a track in hostility to the previously acquired right of defendant. (4) The municipal consent granted Nov. 20th, to a grantee designated by plaintiff's corporate name, could not defeat in any degree the previously acquired right of defendant company, nor could it be joined to a subsequent incorporation so as to have such effect.

Argued Nov. 9, 1894. Appeal, Nos. 315, 316, Oct. T., 1894, by plaintiff and defendant, from decrees of C. P. No. 3, Allegheny Co., Aug. T., 1894, Nos. 139, 170, on bills in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bills to restrain construction of electric railway.

From the record it appears that, on Nov. 20, 1893, the supervisors of Mifflin township signed an instrument in writing purporting to grant to the "Homestead Street Railway Company" the privilege of entering upon the public road of Mifflin township, known as the River Road, leading from Pittsburg to Munhall station, and constructing on the southerly or upper side of said road a street railway, with single or double track and necessary turnouts, switches, etc. On Nov. 29, 1893, the charter was duly granted to plaintiff. On Dec. 19, 1893, the same supervisors executed another instrument of writing, granting to defendant, the Pittsburg and Homestead Electric Street Railway Company, which had been duly incorporated Nov. 16, 1893, the privilege of constructing a street railway on the north side of said road, between Hays station and the borough of Homestead, in said township. In this paper it was stipulated that the railway to be laid under this latter consent should be laid on the portion of the road remaining after the grant to the plaintiff company, or on the portion of the road not granted

to the plaintiff company. It did not appear that this paper was accepted or acted upon by the Pittsburg and Homestead Electric Street Railway, and on March 3, 1894, another agreement was entered into between the supervisors and The Pittsburg and Homestead Electric Street Railway company, giving consent to said company to occupy said road with an electric street railway, between Hays station and the borough of Homestead, without specifying what portion or side of said road should be occupied. In March, 1894, defendant company began the construction of its road over the proposed route, and continued in the work until about the time of the filing of the bill. The supervisors also filed a bill against the Homestead St. Ry.

The injunction prayed for by the Homestead St. Ry. Co. was granted, and the other refused, in an opinion by KENNEDY, P. J.

*Errors assigned* were decrees, quoting them.

*Wm. B. Rodgers* and *J. M. Swearingen, J. R. McQuade* with them, for appellant.—The alleged agreement of Nov. 20, 1893, between the supervisors and appellee, is void: Gent v. Ins. Co., 107 Ill. 652; act of May 14, 1889, P. L. 211; New Brighton & N. C. R. R.'s Ap., 105 Pa. 13; Williamsport R. R. v. Phila. R. R., 141 Pa. 407; Keller v. Baxter, L. R. 2 C. P. 174; Penn Match Co. v. Hapwood, 141 Mass. 145; McArthur v. The Times Print. Co., 48 Minn. 319.

It was not the intention of the legislature that the public should be excluded from the use of the highways of the state. If more than one charter can be granted, there can be as many granted as there is room for. Thus the public would be driven off the roads, except as subject to street railways. This result the act plainly prevents. One street railway upon a road is all that the legislature thought necessary for the public.

Whenever a charter has been lawfully granted and the corporation has thereby undertaken the duties imposed, the act of 1889 does not intend that it shall be disturbed. Hence by its terms the authority to grant charters is limited first to highways and secondly to such of them upon which no track is already authorized: Chicago City Ry. v. People ex rel., 73 Ill. 541; Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 116

*John F. Sanderson, Walter Lyon, Charles H. McKee* and
*D. H. Stone* with him, for appellee.—Concurrent rights may
exist under the act of 1889: Pa. Schuylkill Val. R. R. v. R. R.,
157 Pa. 42; Norristown Pass. Ry. v. Ry., 3 Mont. Co. R. 119;
Easton Transit Co., 2 Dist. R. 649.

If the right be exclusive, plaintiff has the better right, hav-
ing the prior local consent.

Defendant has no standing to question the corporate power
and authority of plaintiff: Western Penna. Co.'s Ap., 104 Pa.
399; Junction R. R. v. Williamsport, 154 Pa. 130; Phila. etc.
Co.'s Ap., 102 Pa. 123.

The consent was a valid consent: Reeves v. Traction Co.,
152 Pa. 153; Pittsburg's Ap., 115 Pa. 4; Larimer St. Ry. v.
Ry., 137 Pa. 533; Rathbone v. Navigation Co., 2 W. & S. 74; 3
Kent, Com. 450; Bell's Gap R. R. v. Christy, 79 Pa. 58; Mc-
Clure v. Peoples Ry., 90 Pa. 271; Allegheny v. R. R., 159
Pa. 411.

HOMESTEAD ST. RAILWAY. v. RAILWAY.

OPINION BY MR. JUSTICE GREEN, Jan. 14, 1895:

The subject of contention in this case is the right of the
plaintiff to occupy, with its railway, a part of a public road in
Mifflin township between Pittsburg and Homestead. Both the
parties are electric street railway companies. In the bill the
plaintiff asked for an injunction to restrain the defendant from
the construction of any electric road upon the part of the high-
way in question, and also to restrain any interference by the
defendant with the construction of the plaintiff's road. The
learned court below decreed that the plaintiff had a right to
construct its railway on the highway, but that its rights were
not exclusive, and the defendant was also entitled to construct
its railway upon the same highway. Each of the litigants held
a permissive grant from the township authorities. The order
of the charters and grants of permission is as follows: The de-
fendant obtained its charter November 16, 1893, and the mu-
nicipal consent on Dec. 19, 1893. The plaintiff obtained its
charter Nov. 29, 1893, and a municipal consent was granted on
November 20, 1893, the grantee therein named being "The
Homestead Street Railway Company." The defendant chal-
lenges the validity of this grant as there was no such company
in existence when the grant was made.

It will be perceived, therefore, that one main subject of contention is whether there may be two, or rather more than one, grants of franchise to construct street passenger railways on the same public highway.

Both of these companies were chartered under the general law of May 14, 1889, P. L. 211. The authority for the charters is conferred by the first section of the act, and its language is as follows:

" Be it enacted that any number of persons, not less than five, may form a company for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid, or to be extended under any existing charter, with the privilege of occupying so much of any street, used or authorized to be used under any existing charter, as is hereinafter provided, for public use in the conveyance of passengers by any power other than by locomotive."

We have reached the conclusion that there can be but one street railway franchise upon the same highway under this statute. The express words of the act limit the right of incorporation to one railway only. The purpose of the act is expressed in its title to be, " To provide for the incorporation and government of street railway companies in this commonwealth." A reading of the whole act shows that the incorporation of street railway companies, and their government, was the entire purpose and object of the act. The earlier sections provide for the manner of accomplishing the organization, and define the powers and privileges of the corporations. The 4th section confers authority to construct extensions and branches, provided " That no extension or branch shall be constructed on any street or highway upon which a track is laid or authorized under any existing charter, except as hereinafter provided."

The 14th section confers a right to use portions of the tracks of other companies already laid when it is necessary to construct a circuit upon its own road at the end thereof, but the extent of such use is limited to five hundred feet, and compensation must be paid for the privilege. By the 15th section it is provided that no street passenger railway shall be constructed by any company incorporated under the act, within the limits of any city, borough or township, without the consent of the

local authorities thereof. The 17th section provides that any company may ascertain and define such route as they may deem expedient upon any turnpike, not however exceeding width for two tracks to be laid upon such turnpike, and thereupon to lay down a track or tracks for its use in the transaction of its business, but making compensation therefor in the manner provided by the act. By the 19th section it is provided that street passenger railway companies shall have the right to the street and any willful obstruction of the passage of the cars shall be punishable by fine, upon conviction.

We think it apparent that all of these sections are inconsistent with the exercise of more than one railway franchise on the same street.

The language of the 1st section expressly limits even the right of incorporation to such companies only, as are formed, "for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid, or to be extended under any existing charter." That is, the statutory power of incorporation can only be executed in favor of a company which will construct and operate a railway on a street or highway, upon which "no track is laid or authorized to be laid," under any existing charter. There can be but one meaning to these words and that is, if a track is already laid, or even authorized to be laid, on the proposed street or highway, then there can be no incorporation of such company. It cannot come into existence, and, as a matter of course, if a charter should be obtained in such circumstances, it would be simply nugatory; it could confer no power in hostility with the law of its creation. It seems to us there can be no more convincing proof than this, that it is the settled, fixed, established policy of the commonwealth, as determined by this legislation, that there shall not be more than one lawfully authorized street passenger railway track laid upon the same street or highway at one time.

There are manifest reasons why such a policy should prevail, though it is not necessary to look for them. These railways are authorized to be laid upon the public highways of the commonwealth. Those highways are for the use of the whole public, all the citizens of the commonwealth in all its territorial

extent.   This use is of the broadest and most comprehensive
character, embracing, as it does, all the purposes of free and
unobstructed passage for the persons, the vehicles, the animals
and other property of the citizens at all times.   Now it is not
thought inconsistent with this right to confer a right to a
special mode of transit by means of street cars and railway
tracks on the highways, because they tend to facilitate rather
than obstruct public travel.   But it is very easy to see how the
right of the general public to free and unobstructed travel,
may become most seriously impaired if there should be an
unlimited right to occupy the streets and highways of the com-
monwealth with railway tracks.   Even one track becomes at
times, especially in our large towns and cities, an obstruction
to travel.   The great bulk of public travel is off, and not on,
our street cars.   In the crowded thoroughfares, particularly
where the streets are constantly occupied by horses and car-
riages, heavy wagons, carts, drays, omnibuses and other vehi-
cles, a duplication of street car tracks would be an intolerable
burden and a most serious obstruction.   Even on country roads
where travel is much less, the traveled part of the roads is so
much narrower than in the cities and towns that the obstruc-
tion would be felt quite as severely as in the streets of the
cities.   It is a very proper inference, therefore, that when the
legislature prohibited, in the fundamental law of street rail-
ways, the laying of more than one track upon one street or
highway, it was for the purpose of preventing the obstruction
of travel on the highways of the commonwealth.

The 4th section of the act contains the same prohibition in
relation to extensions and branches, as is imposed by the first
as to the original structure.

In a negative sense the 14th section, by giving the right to
make a circuit by occupying a distance of five hundred feet of
the track of any other company, recognizes the same principle
of the non-occupancy of the highway by more tracks than one.

The 15th section, by imposing upon the street railway com-
panies the duty of obtaining the consent of the municipal author-
ities to the occupancy of their streets, placed it within the power
of the local governments to absolutely prevent the obstruction
of their streets by refusing their consent to such occupancy.
So that if a second occupation should be proposed the authori-

ties could stop it immediately by simply refusing their consent.
There would be little use for such a right of refusal if it was
the purpose of the act to empower as many railway companies
as could obtain charters to lay their tracks upon streets already
occupied.

The 17th section, which authorizes the occupancy of turn-
pikes by street railway companies upon making compensation,
expressly prohibits the laying of more than a double track,
thereby implying that two tracks at most, and those belonging
to the same company, should be tolerated on the same highway.

We conclude the reading of the act by declaring that its
manifest and consistent purpose is, to prevent the occupancy of
the public highways by more than the track, or tracks, of one
street railway company.

Some contention is made that by the expression " under any
existing charter," is meant only charters existing at the date of the
passage of the act.   But this proposition is so manifestly unten-
able that it deserves only a passing notice.   The plain reading
of the language of the section proves conclusively that the
exclusive words, " upon which no track is laid or authorized to
be laid," relate to the time of proposed incorporation, for they
prohibit-the incorporation of such a company.   How can a com-
pany be incorporated years after the passage of the act, if there
was no outstanding charter, or track actually laid, at the date
of the act, and yet there was such a prior charter, or track laid,
after the date of the act but before the application for incorpora-
tion.   The act would be senseless if it meant to permit the
incorporation of a company notwithstanding the presence of a
recent track, or the existence of a recent charter granted after
the date of the act, and yet prohibited incorporation if the track
or the charter existed when the act was passed.

We hold therefore that the time of which the act speaks, is
the time of proposed incorporation, and that such incorporation
is prohibited if then, at that time, there is a track laid or an
outstanding authority for a track.

Assuming then that incorporation is prohibited, if at the time
it is sought there is a track down or any outstanding authority
to lay a track, the practical question here is, which of these lit-
igant companies is subject to that prohibition.   It is certain
that on November 16, 1893, when the defendant company

sought and obtained its charter, there was no track laid, and it is equally certain that there was no outstanding authority residing in the plaintiff to lay a track, for the simple but conclusive reason that the plaintiff company had at that time no corporate existence. It had not even the municipal consent although unincorporated, because that consent was not given until November 20th, and it could not possibly antedate the day of its birth, and have a pre-natal efficacy to prevent the defendant's otherwise lawful incorporation. But the municipal consent alone could not suffice to create a right to lay a track, without being joined with a corporate existence possessing a proper franchise. Whether such a consent might be joined to a subsequent incorporation is perhaps immaterial to consider, because, whether it could or not, it could not operate to debar, or to defeat, a prior incorporation, granted when there was neither corporate existence nor municipal consent residing with the plaintiff.

We consider the subject too plain for a prolonged argument. Of course the prior incorporation of the defendant being perfectly valid, a reasonable time must be conceded in which to obtain municipal consent, and this was so proceeded with that on the 19th of December, barely a month after the charter was obtained, full municipal consent was given, and an important contract executed, regulating the construction of the road, between the municipality and the defendant company. The chronological situation therefore suffices for all the legal needs of the defendant in the acquisition and assertion of its prior right.

But there is no lack of logical or legal precision in holding that, in any point of view with which the plaintiff is concerned, there was a real authorization of the defendant company to lay a track prior to the grant of the plaintiff's charter or even to the application for it. The plaintiff's Articles of Association were not signed or attested until November 21, 1893, and the proceeding for incorporation was not completed until the 29th, while the defendant's proceeding was completed on the 16th. Now the charter of the defendant company fully authorized the laying of a track over the disputed highway. The source of such authority is not the municipality but the commonwealth, through its enabling legislation, in this case the act of 1889.

The municipal consent is an incident, essential, it is true, but necessarily of subsequent occurrence. So far as incorporation is concerned the authorization to lay the track is complete when the charter is obtained. Therefore both when the plaintiff's municipal consent was obtained (granting that it could be obtained prior to actual incorporation, which is more than doubtful), and also when its charter of incorporation was sought and obtained, there was a previously authorized charter right to lay the track in question which was followed up with the necessary municipal consent immediately thereafter. This being so the plaintiff's right to incorporation was posterior in time to the defendant's and was subject to the prohibition of the statute, hence it cannot be set up against the defendant's prior right, which was unaffected by the prohibition of the statute.

We hold therefore: (1) That the defendant was legally authorized to lay a track on the disputed highway at the time of the plaintiff's application for a charter. (2) That the defendant obtained the municipal consent to lay the track within a reasonable time after the grant of its charter, and therefore consummated its legal right by the speedy acquisition of the municipal consent. (3) That the plaintiff was subject to the prohibition of the statute at the time of its application for a charter, and could not acquire a right to occupy the disputed highway with a track, in hostility with the previously acquired right of the defendant. (4) The municipal consent granted on November 20, 1893, to a grantee designated as " The Homestead Street Railway Company," could not defeat in any degree the previously acquired right of the defendant company, nor could it be joined to a subsequent incorporation so as to have such effect. We say this without saying, or intending to say, that in no circumstances could a previously granted municipal consent be acquired by a subsequently incorporated company. It may be that on the principle of ratification or adoption, all parties consenting, and no intervening rights being affected, such a combination might be accomplished, but we do say that it cannot be done to defeat an opposing right which was already initiated and perfected, so far as the law permitted, at a time anterior to both the municipal consent and the subsequent incorporation of the opposing claimant. The municipal consent of itself can confer no right. The municipality has no

power to confer the franchise. But it is the franchise and that alone which gives the legal right to build the railway. When the franchise is granted, authority is conferred to lay the track, and it can then truly be said that the laying of a track is authorized. Municipal consent is only essential to the execution of the authority, not at all to its creation.

Definitely and in this case we do say, therefore, that the municipal consent set up by the plaintiff has no validity as against the defendant. No corporation of the plaintiff's name, vested with authority to lay any track over this disputed highway, was in existence at the time of the grant, and as no other than that kind of a body could receive such a grant, the attempt of the supervisors of Mifflin township to give consent to the plaintiff to lay a track on the highway in question, by their resolution of November 20th, 1893, was a void act and ineffective for any purpose. The language of the 15th section is, "No street passenger railway shall be constructed by any company incorporated under this act, within the limits of any city, borough or township, without the consent of the local authorities thereof."

It is manifest at a glance that only a "company incorporated under this act" could construct a passenger railway within the limits of the township, and hence a grant of permission to lay the track could only be made to such a company. But the company had no existence when the grant was made and was therefore not competent to accept it. On the contrary when the grant of permission was made to the defendant, it had a full corporate existence and was clothed with legislative authority to lay the track in question.

The act of 1889 is of such recent origin that cases involving the question at issue, have not heretofore arisen, and there is, therefore, an entire absence of authorities directly upon the subject we are now considering. There is however some analogy in cases of steam railroad construction. Thus in the case of New Brighton and New Castle Railroad Co. v. Pittsburg, Youngstown and Chicago R. R. Co., 105 Pa. 13, the two contending companies were duly incorporated with authority to construct a railroad along Big Beaver River between defined points. Each company claimed to have adopted a survey and location of a route made by engineers before either company

was incorporated, and the contest was, which had the prior right to the location at points of interference? The present Chief Justice delivering the opinion said, "It thus appears that the first act of each company looking to the location of its line, was the adoption by mere resolution of a survey and location made before either of them came into existence, by parties who, respectively, had no authority to survey, locate or construct a railroad on the route in question. The first location actually made on the ground after the incorporation of either company, was that made by appellant, as above stated. It is too clear for argument that neither of the surveys thus made, prior to the incorporation of either company, by parties having no authority to locate or construct a railroad on the route in question, could, in and of themselves, confer any right to the location in dispute." After stating that the question in dispute turned upon the construction of the general act of 1868 authorizing the creation of railroad companies by voluntary articles of association, and pointing out the authority of companies organized under that law, the opinion proceeds: "The provisions of the act are clear and explicit. Every railroad company is created for a purpose that is essentially public; and to that end it is clothed with a right of eminent domain. . . . It is expressly authorized to survey, mark and determine the route of its road between the points designated in its charter, and to enter upon and occupy all lands on which its road may be so located. . . . In thus exercising the right of appropriating to public use the lands of private individuals, it is necessary, in the first place, to survey, locate and designate by appropriate marks, the property to be taken. It was undoubtedly intended that these essential acts upon the ground should be performed, not by the projectors of a railroad company before its incorporation, nor by any one not authorized by the legislature to do so, but only by the president and directors of a duly incorporated company, their engineers and employees. Indeed the act expressly authorizes them to do so, but is silent as to the right of all others. No such thing as a wholesale adoption by mere resolution, of an unauthorized preliminary survey and location, appears to have been contemplated."

The foregoing principles were reaffirmed and again enforced, in an exhaustive opinion by our brother WILLIAMS in the case

of Williamsport etc. R. Co. v. Phila. etc. R. Co., 141 Pa. 407, in which we held that nothing but an actual location and appropriation after incorporation, would suffice to confer title to the route of a railroad.

Applying this doctrine to the present contention it will be perceived that the subject of controversy is the right to locate and construct a railway track upon the bed of a public road in Mifflin township. The plaintiff, not denying the prior charter right of the defendant to occupy the same road with its track, alleges that a grant of permission by the authorities of the township was made to it before a similar grant of permission was made to the defendant, and claims that the prior permission granted to itself, after its charter right had come into existence by the organization which it completed on November 29th, 1893, became effectively attached thereto so as to confer title to the location by priority of right. In point of fact the plaintiff had no corporate existence until Nov. 29th, 1893, and did not do any act, by acceptance of the permission, or by any resolution of adoption, at any time before Dec. 19th, 1893, when the municipal authorities made a direct grant of permission to the defendant company in its corporate capacity. The situation then is, that the defendant held both a prior chartered right to occupy the street, and a full municipal permission to do so, granted after it became incorporated, while the plaintiff held a chartered right subsequent to that of the defendant, and no grant of permission from the municipal authorities to itself as a corporation. Now the disputed question being the right to build the railway on a particular street, which company had the prior right? The plaintiff seeks to make out a complete prior right in itself by the aid of a grant of permission made when it had no existence as a corporation. Independently of the reply to this contention which grows out of the prior charter of the defendant, which at least authorized the building of the railway, it is apparent, from the foregoing decisions, that the grant of permission of Nov. 20th, was ineffective to confer any right to the location, because it was not made to anybody competent to build the road. Although the grant was made nominally to a grantee called the Homestead Street Railway Company, there was no such company in existence, and therefore, no party competent to build the road. But if there was no competency to build

the road there was none to accept the grant of the municipal permission to build it.   The municipal authorities had no power whatever to confer a franchise to build, upon any corporation, and of course not upon any individuals.   Now although in the above cited cases the right to build the road carried with it the power of eminent domain to the contending companies, thereby authorizing the taking of private property, we can see no difference in principle between those cases and this.   The fundamental condition is the same in both, to wit, an actual corporate existence clothed with a legal right to build a railroad.   In the cited cases there was a complete actual survey and location by both, of an actual route on the ground, but because it was made before incorporation, although by the agents and employees of the persons who subsequently became incorporated, it was held entirely ineffective, although in one of the cases there was a formal adoption by the company after incorporation. And it was so held because the thing to be done, to wit, the location and building of a railroad, could not be done except by an incorporated company. · But the act of 1889 is just as imperative upon this subject as the act of 1868.   Both require an actual incorporation, because the franchise is only conferred upon chartered companies, and the administrative acts authorized to be done must all be done by the actual corporate body.

The case of Larimer Railway Co. v. Railway Co., 137 Pa. 533, does not raise the question involved· here, and was not decided upon any point applicable to this.   The defendant there had both a chartered right to build the road and also the municipal consent given to itself, in its corporate capacity. The plaintiff had a prior chartered right but it had no municipal consent at all, the same having been applied for but flatly refused.   The case was decided upon the point that the plaintiff being without any municipal consent had no standing to be heard.   The question whether a consent given prior to incorporation, could become effective, was not in the case and did not arise.   Nor did the other question arise, whether a prior chartered right, followed speedily and within a reasonable time by full municipal consent, would be legally prior to a subsequent charter preceded by a municipal consent granted before incorporation.   These are both new questions which require decision upon their own merits.

Upon the whole case we are of opinion that the defendant company has priority of right to occupy the highway in question and that its right of occupancy is exclusive as against the plaintiff. Of course we do not agree that there may be concurrent rights of construction upon the same highway in both companies.

The decree of the court below is reversed and the plaintiff's bill is dismissed with costs.

LONG ET AL., SUPERVISORS, v. RAILWAY.

OPINION BY MR. JUSTICE GREEN, Jan. 14, 1895 :

In the opinion just filed in the case of the Homestead Street Railway Company v. The Pittsburg and Homestead Electric Street Railway Co., we have decided that the grant of permission by the plaintiffs as supervisors of Mifflin township to the Homestead Street Railway Company, made by resolution on Nov. 20, 1893, to lay their proposed track on the public road in Mifflin township, was a void act for want of proper parties to receive the grant. We also decided that the grant of permission to the Pittsburg and Homestead Electric Street Railway Company, made by the same parties on December 19, 1893, to lay their tracks on the same road, was a valid legal act which conferred upon that company full power and authority, in connection with their charter, obtained on the 16th of November, 1893, to occupy the said public road and lay thereon the track of their proposed railway, and that the authority thus created was exclusive of any such right in the Homestead Street Railway Company. That decision disposes of this case and requires the reversal of the decree made by the learned court below.

The decree of the court below is reversed, the plaintiff's bill is re-instated and it is now ordered, adjudged and decreed that the grant of Nov. 20, 1893, by the supervisors of Mifflin township to the Homestead Street Railway Company, was an invalid grant and conferred no authority upon said company to construct its railway on the highway in the said grant described. It is further adjudged and decreed that the defendant, The Homestead Street Railway Company, be perpetually enjoined from constructing any street railway upon the said highway and from interfering with the Pittsburg and Homestead Electric Street Railway Company in the construction of their railway upon said highway.