AFRICA v. BOARD OF MAYOR AND ALDERMEN OF CITY OF KNOX-VILLE et al.

(Circuit Court, E. D. Tennessee, N. D. October 19, 1895.)

1. STREET-RAILWAY COMPANIES—DESCRIPTION OF ROUTE.
    The statute of Tennessee (Mill. & V. Code, § 1920) prescribing the form of charters of street railway companies provides a form for the description of routes therein, as follows: "[Here insert the initial terminus,] and ending at [here insert the terminus and general route of the road]." Held, that a charter adopted pursuant to such statute, which sets out a general route over one street in a city, and then refers to other streets by name only, with a general statement including all the streets of the city, then established or thereafter to be established, to the corporate limits, is sufficiently specific in its description, and gives the company the right to use any of the streets included in such description.

2. SAME—FRANCHISE—CONSENT OF MUNICIPALITY—REVOCATION.
    The franchise of a street-railway company to operate its road and use the streets of a city is derived from the legislature, through its charter, and not from the municipal corporation, though the consent of the latter be required to the exercise of its authority. Such franchise, upon acceptance by the company, becomes a contract, inviolable and irrevocable; and the consent of the municipality, when once given, cannot, in the absence of a statute authorizing its withdrawal, be withdrawn, either as to

streets actually occupied or as to streets included within the general plan of the company's routes, which it intends in good faith to complete.

3. SAME.

The K. St. Ry. Co., which was incorporated under the general incorporation act of Tennessee, obtained the consent of the city of K. to the use of its streets for the construction of the road, upon the route which was described in the charter and in the ordinance giving the city's consent, by reference to certain streets of the city by name, and all other streets of the city, then established or thereafter to be established. Other street-railway companies, having similar charters and similar consents, were afterwards consolidated with the K. Co. The road was constructed on certain streets, and operated by the consolidated company, extensions being made from time to time. Subsequently the city council passed an ordinance revoking the consent of the city to the use of the streets which were not then occupied by the road. *Held*, that it was not in the power of the city to revoke its consent to the use of the streets, and that the ordinance was void.

4. SAME—DURATION OF CONSENT.

The ordinance by which the consent of the city was given to the construction of the road provided that the rights conferred should exist during the corporate existence of the company. *Held*, that the city was without power, and could not, from such ordinance, be supposed to have intended, to limit its consent to any less period than the duration of the franchise granted by the state.

5. SAME—CONSOLIDATION.

*Held*, further, that under the provision in the statute relating to consolidation of railway companies, that the consolidated company should have all the rights, etc., and be subject to all the duties, of the constituent companies, the consolidation of the K. Co. with the other companies worked a change of name, the franchise in the streets of the city of K. passing to the new company, and the consent of the city was not terminated by extinguishment of the companies to which it was granted.

6. SAME—ABANDONMENT.

There can be no abandonment of the consent of the municipal authorities to the use of city streets by a street-railway company, apart from an abandonment of the franchise granted by the state; and the question of such abandonment cannot be raised collaterally in a suit by the company to protect its franchise.

7. EQUITY PRACTICE—PRELIMINARY INJUNCTION.

After the attempted revocation of the K. Co.'s franchise, the city procured an injunction restraining it from laying tracks on new streets, and gave its consent to the laying of tracks on such streets by a rival company. The purchaser at foreclosure sale of the property and rights of the K. Co. filed a bill against the rival company, alleging his own intention, in good faith, to extend the road upon the new streets, and otherwise showing a right to retain the franchise of the K. Co. in such streets. The answer alleged facts tending to show that the plaintiff was acting for obstruction only, and not in good faith. *Held* that, notwithstanding such allegations of the answer, a preliminary injunction, restraining the laying of tracks, should be granted, since to deny it would be, in effect, to deny the whole relief sought, and would cause embarrassment if the issue should be ultimately decided in plaintiff's favor.

This was a suit by J. Simpson Africa, trustee, against the board of mayor and aldermen of the city of Knoxville, Tenn., and the Citizens' Railway Company, to enjoin the laying of street-railway tracks in certain streets of the city of Knoxville.

Webb & McClung and Wheeler & McDermott, for complainant.
Tully R. Cornick, Lucky, Sanford & Tyson, and Joshua W. Caldwell, for defendants.

CLARK, District Judge. A restraining order having been granted, the case is now considered on the application for injunction. Complainant recently purchased the corporate property and franchises of certain street-railroad companies formed for the purpose of operating street railroads in the city of Knoxville. The original company was the Knoxville Street-Railroad Company, which subsequently became consolidated, under the statute of the state, with other companies. No question is made on the regularity of such consolidation, and it becomes unnecessary, for the purpose of this case, to refer in detail to such consolidation. The original and other constituent companies obtained charters under the general incorporation act, and obtained the consent of the city to the use of the streets with an ordinance passed for that purpose. The articles of association of the original company were properly executed, and registered as required by statute. The articles, in describing the route of the road and the streets to be occupied, set out a general route over Gay street, about which no question is made, and then referred to other streets by name only, with a general statement including all the streets of the city, then established or thereafter to be established to the corporate limits. Some of these streets were parallel and some at right angles to the street constituting the principal route of the road. The description in the ordinance passed giving the city's consent to the use of the streets was similar to that in the charter, and referred to the charter. The company constructed its main line on Gay street, and a few other streets, not necessary to be named, and has been in the operation of the railroad thereon, making certain extensions from time to time. The streets involved in this controversy are Church avenue, Central avenue, Jackson and Oak streets, and to an extent also Gay street. Of these Gay street has been occupied from the beginning, and a small portion of Crozier street, now Central avenue, was occupied part or all of the time. In July, 1892, the city council of Knoxville undertook by ordinance to revoke its consent previously granted to the use of all streets not then occupied, with the exception of certain streets, not necessary to be named. Recently a new company has been formed for the purpose of operating lines of railroad on the streets of Knoxville, and among them the streets above named as being in controversy. Since the formation of that company, the complainant, as purchaser of the property and franchises of the old company, commenced laying tracks upon Church avenue, Central avenue, and Oak street. This work was begun in the nighttime. Thereupon the city filed an injunction bill in the state court, and obtained an injunction restraining the complainant from further construction of a line upon those streets. The bill further avers that the city council had instructed the police of the city to stop complainant's work, and, if necessary, to arrest his employés. The bill further alleges, as the facts appear to be, that the new company holds a franchise with consent of the city, by ordinance, not only to use Church and Central avenues and Oak street, but also Gay street; the ordinance as to Gay street

containing provisions which make it impossible to construct on that street a track parallel to those of the complainant, and which requires necessarily the use of the complainant's track if the franchises on that street are to be used at all by the new company. The answers of both the city and the new company in respect to the charges of the bill intended to furnish ground for the injunction are evasive as to the essential facts alleged. While denying that certain declarations had been made as stated in the bill, the answers carefully avoid stating or taking position as to the intention of the defendants in this respect. This, together with other circumstances connected with the case, renders the answers, so far as a denial of the essential ground of relief is concerned, quite unsatisfactory and insufficient. 2 Beach, Mod. Eq. Prac. § 782; Yale v. Moore, 3 Tenn. Ch. 76.

The complainant, holding the older franchise, with an ordinance of the city giving its consent, and having entered upon the street with express permission, as appears, from the chairman of the board of public works of the city, which is the real administrative board over the streets thereof, is entitled to a preliminary injunction, having clearly made out a prima facie case therefor, unless the defenses set up in the answer defeat this right. The first objection taken by the answer is that the charter of the original company, as well as the ordinance passed by the city legislature, are void, as not being sufficiently specific in describing the streets so far as the streets therein were not described otherwise than by name, and so far as the streets were not described at all otherwise than as "all the streets of the city, then or thereafter to be established." It will be perceived that this is an attack, not upon the charter as a whole, but in part only. If the attack were upon the charter as a whole, it would clearly involve corporate existence, and no such question could be made in this proceeding collaterally. Dallas Co. v. Huidekoper, 154 U. S. 654, 14 Sup. Ct. 1190.

Passing by the difficulty of declaring a charter of this kind void in part, as well as the objection to the manner in which the question is made, it is not difficult, in my opinion, to affirm that this objection is not well taken. The statute (Mill. & V. Code, § 1920) prescribes the form of charter, and with respect to the point now in question gives this direction: "[Here insert the initial terminus,] and ending at [here insert the terminus and general route of the road]." And this is the provision of the statute relied on as a ground for drawing in question the validity of the charter. This provision clearly contemplates that only the general route shall be described by giving the initial terminus, etc., and implies that other lines and connections auxiliary to the main line and as part of a system need not be set out in the same way. Reference to a street by name, with a general reference to the corporate limits, clearly makes the description of such street good for any practical purpose. It is a substantial reference to the plan of the town, an inspection of which would at once show the length and location of the street. And so I think, too, that it was competent in the charter and in the

ordinance to give to the company any street that it might choose to use in the extension of its system and in the growth and extension of the city limits by the designation as any streets then laid out or thereafter to be laid out. It was not necessary, as the public good might require, and the business might justify, that a separate ordinance should be passed for each new street to be occupied as new streets might be established. The constitution of 1870 prohibited special acts of incorporation, and required the enactment of a general law under which corporations might be formed, and the legislation upon this subject should be given a reasonably liberal interpretation, with a view to making the same practically effective. Besides, this charter is in the usual form of such articles, and it is not to be doubted that within the limits of the state millions of dollars have been invested in such enterprises, and the public greatly benefited thereby, both in transportation facilities to growing cities and in the revenue derived by the state from taxation. Sound public policy requires, as far as may be done, that invested capital should be protected by the state's laws and their construction by the courts, and not destroyed.

It is next insisted by the defendants that any previously existing rights on any street not actually occupied and in use were taken away by the repeal of the ordinance in 1892, as before stated, and the plaintiff's contention is that the repealing ordinance is itself unconstitutional and void. In considering this question some general observations may be made. In the first place, it is to be borne in mind that plaintiff's franchise to operate his railroad is not derived from the municipal corporation, but from the legislature itself, and it is none the less so because obtained under a general incorporation act, instead of a special statute, which is no longer constitutionally possible. Telegraph & Telephone Co. v. United Electric Ry. Co., 93 Tenn. 502, 29 S. W. 104; Memphis City R. Co. v. Mayor, etc., of Memphis, 4 Cold. 406; People's Pass. R. Co. v. Memphis City R. Co., 10 Wall. 38; Citizens' St. Ry. Co. v. City Ry. Co., 56 Fed. 746. The only authority delegated to the city in the completion of the franchise rights is the power to give its consent, and to prescribe the terms and conditions on which the streets are to be used. Mill. & V. Code, § 1921. The statute does not reserve to the city council the right of repeal. So far as such right is reserved at all, it is reserved to the legislature itself. The statute does not vest the city with any power whatever to grant or to repeal a grant. Its power over the subject ends when it gives its consent, and prescribes the conditions in an ordinance for that purpose. Whether the city might withhold its consent altogether in the first instance is a point upon which the cases are not agreed, and is not necessary to be considered here. When it has given its consent it has executed and exhausted its power so far as the right to use the street is concerned. The Pennsylvania supreme court, in Homestead St. Ry. v. Pittsburg & H. Electric St. Ry., 166 Pa. St. 162, 30 Atl. 950, referring to the power and function of the city legislature in giving its consent, said:

"The municipal consent of itself can confer no right. The municipality has no power to confer the franchise. But it is the franchise, and that alone, which gives the legal right to build the railway. When the franchise is granted, authority is conferred to lay the track, and it can then truly be said that the laying of a track is authorized. Municipal consent is only essential to the execution of the authority, not at all to its creation."

This leaves untouched questions of reasonable regulation and of police power, and leaves also such terms and conditions as the city chose to require in the ordinance; but it has no power of repeal. The easement thus acquired over the streets of the city becomes at once property, and a property right, and is taxable·as such. Railroad Co. v. Morrow, 87 Tenn. 406, 11 S. W. 348; New Orleans City & L. R. Co. v. New Orleans, 143 U. S. 192, 12 Sup. Ct. 406; Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009; Detroit Citizens' St. Ry. Co. v. City of Detroit, 64 Fed. 628, 12 C. C. A. 365.· The last case cited is well considered and instructive. And the grant of this franchise, when made by the state, and accepted by the company, becomes a contract between the state and the company, giving it a legal estate in the franchise named in the charter, and, being a contract, is, under the constitution of the United States, irrevocable and inviolable. Hazen v. Bank, 1 Sneed, 115; Union Bank v. State, 9 Yerg. 489; Governor v. McEwen, 5 Humph. 242. And this is so though the grant is one of exclusive privilege or franchise for a term of years, such as the exclusive privilege to erect waterworks for a city. City of Memphis v. Memphis Water Co., 5 Heisk. 495; New Orleans Gaslight Co. v. Louisiana, etc., Manuf'g Co., 115 U. S. 650, 6 Sup. Ct. 252. The same doctrine has long been recognized as established in the courts of the United States. Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273; St. Tammany Waterworks Co. v. New Orleans Waterworks, 120 U. S. 64, 7 Sup. Ct. 405. And that this rule is applicable to franchises acquired in the streets of cities has often been decided, and is no longer open to question. City of St. Louis v. W. U. Tel. Co., 63 Fed. 68; Citizens' St. Ry. Co. v. City Ry. Co., 64 Fed. 647; Citizens' St. Ry. Co. v. City of Memphis, 53 Fed. 715; Citizens' St. R. Co. v. City Ry. Co., 56 Fed. 746; Detroit Citizens' St. Ry. Co. v. City of Detroit, 64 Fed. 628, 12 C. C. A. 365; Baltimore Trust & Guarantee Co. v. Mayor, etc., of City of Baltimore, 64 Fed. 153. It is so held by the courts of last resort of the states of the Union by such number of states and by courts of such respectability as to make the authority in favor of the rule overwhelming. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692; Mayor, etc., of City of Houston v. Houston City R. Co., 83 Tex. 548, 19 S. W. 127; City of Bellville v. Citizens' Horse Ry. Co. (Ill. Sup.) 38 N. E. 584; Santa Rosa City Ry. Co. v. Central St. Ry. Co. (Cal.) 38 Pac. 986; Asheville St. Ry. Co. v. City of Asheville (N. C.) 14 S. E. 316; City of Seattle v. Columbus & P. S. R. Co. (Wash.) 33 Pac. 1048; Electric Ry. Co. v. Common Council of Grand Rapids (Mich.) 47 N. W. 567; Indianapolis Cable St. R. Co. v. Citizens' St. R. Co. (Ind. Sup.) 43 Am. & Eng. R. Cas. 234, and cases in note (24 N. E. 1054); Port of Mobile v. Louisville & N. R. Co. (Ala.) 4 South. 106; Hovelman v. Railroad Co., 79 Mo. 632. Other cases from other states are re-

ferred to in City of St. Louis v. W. U. Tel. Co. and Baltimore Trust & Guarantee Co. v. Mayor, etc., of City of Baltimore, supra. Indeed, the cases upon this subject could be accumulated to a great number, and it may not be out of place in this connection to say that the great number of cases in which it has become necessary for the courts to rule upon the question furnishes a somewhat suggestive lesson as to the freedom with which municipal legislatures in this country have undertaken to strike down enterprises which they were anxious to encourage in the first instance with liberal grants and large declarations of good faith. The able counsel for the defendants do not seriously controvert this rule, and do not assert that the attempt to repeal the ordinance would be good as against streets at the time occupied, their contention being that the ordinance is valid as to the streets which had not then been used. In respect to this, I think it is only necessary to say briefly that no commercial railroad, and no street railroad of any considerable importance, is ever determined upon except as a system or plan, and it is certain in many or most instances that if, after a partial completion of the plan, the right to go further could be withdrawn by repeal of the franchise, it would render the system, so far as extended, of little value, and would operate widely as a destruction of property and rights in proportion to the progress of the work at the time of the withdrawal. It certainly would not be contended that a franchise to build a railroad between two cities could be repealed after the work is begun and before its completion; and in respect to a street railroad I think it could hardly be maintained that, if a given number of streets are necessary to the operation of a successful plan or system, and a part of such streets have been entered upon and occupied, the right to use the remainder of the streets can be revoked. That this might not be attended with serious injury in a particular instance does not affect the general rule which must be applied to the subject. The attempted repeal of the ordinance in this instance, so far as the record discloses, was entirely arbitrary, without notice to the company, and without giving it the benefit of any condition, time limit, or other opportunity to save its rights if it desired to do so. No demand in any form appears ever to have been made on the company to go forward with the work, or with its extension over any street. That the city was without authority from the legislature of the state to repeal this ordinance, and was without the constitutional power to do so, are questions upon which the court has no doubt. If the city might withdraw its consent, it is certain, and not controverted, that the effect would be thereby indirectly to destroy the franchise granted by the state, and this would be to accomplish by a limited, delegated authority what the legislature itself could not do, either directly or indirectly, by virtue of all the sovereignty of the state which it might exercise. It is clear that such power in the city legislature would conflict with the settled constitutional and statutory policy of the state in regard to private corporations. Charters can no longer be obtained by special statute. A general uni-

form law has been enacted.　　In regard to street-railroad companies the incorporation act provides:

"1923. The company may issue bonds payable in such amount at such time and places as it deems best, with coupons attached for payment of interest, and may dispose of the same to raise money to construct or repair the road, and to secure payment of the same may mortgage the property, real and personal, and also the franchises of the company."

If the city may arbitrarily withdraw its consent after the same has been given and accepted, it may practically render nugatory this statutory provision, and destroy the security of the mortgage in the hands of those loaning money upon the faith of such mortgage and of this legislation.　　In the now leading case, already referred to, of Detroit Citizens' St. Ry. Co. v. City of Detroit, 64 Fed. 628, 12 C. C. A. 365, reported also in 26 Lawy. Rep. Ann. 667, it was, in effect, said (Judge Lurton giving the opinion) that express power to grant irrevocable consent to the use of streets for street railways was given to a city by statutes providing that companies may construct railways "with the consent of the corporate authorities," especially when other statutes provided for the giving of mortgages on such railways, which should be deemed mortgages on realty.　　The bearing of that case on this is obvious enough.

Referring once more to the proposition that the franchises in a case like this are accepted as a whole and with reference to a plan, and not in respect to streets separately, I quote from the supreme court of Indiana in the case before referred to of Indianapolis Cable St. R. Co. v. Citizens' St. R. Co. as follows:

"At this point the question arises as to what were the rights of the appellant and the appellee, in so far as they had the right to occupy the streets of the city, as between themselves. As to unoccupied streets, our opinion is that they stood upon an equality, and that the controversy resolves itself into a question of first occupancy. Judge Elliott, in discussing this question in his work on Roads and Streets (page 570), says: 'If the company which secures the first grant actually occupies the street it is authorized to use, then there is much reason for affirming that its right to the part of the street actually occupied and used is paramount and exclusive. By actually taking possession of the street, and using it for the accommodation of the public, the company first in point of time does such acts as vests its right. But, to have this effect, the company, as it seems to us, must take possession in good faith, and for the purpose of constructing and operating such a railway as the grant contemplates. * * * While it is, as we believe, true that some act must be done vesting the inchoate right conferred by a general grant, still we do not regard it as essential that manual possession should be taken of all the streets or roads embraced in the general grant or license. If the company having the prior right enters upon the work of constructing a system, and with reasonable diligence and good faith does actually construct a considerable part of the system, it ought not to lose its rights until it has failed to comply with a proper demand to complete the system, or has unreasonably delayed its completion. * * * Conflicting claims asserted by rival companies claiming under general grants must often be settled by applying the rule that the first to rightfully occupy the street has the better right.' We have thus copied copiously from the work above referred to because we think it states the law accurately and concisely. See, also, Waterbury v. Railroad Co., 54 Barb. 388; Titusville & P. C. R. Co. v. Warren & V. R. Co., 12 Phila. 642; Morris & E. R. Co. v. Blair, 9 N. J. Eq. 635; Denver & R. G. R. Co. v. Canon City & S. J. R. Co., 99 U. S. 463. Where a company has entered upon the construction of a particular system of street railroads, and

has expended its money in the prosecution of the work, it would be manifestly unjust to permit some other person or company, after the commencement of the work, to jump in and appropriate any portion of the streets involved in such system, while the former was diligently prosecuting the work, and thus destroy the system, to the ruin of the company engaged in its construction. If this could be done, no person or company would undertake the construction of a system of street railroads. But to hold the right to such systems, money should be expended in its construction, and the work, with a view to its completion, should be diligently prosecuted, without intermission, unless stopped by circumstances over which the projector has no control."

To the same effect is the case of Fidelity Trust & Safety Vault Co. v. Mobile St. Ry. Co., 53 Fed. 687.

The only case found in this examination which asserts somewhat broadly the right of repeal in the municipal legislature in this class of cases is that by the court of appeals of Maryland in Lake Roland El. Ry. Co. v. Mayor, etc., of Baltimore, 26 Atl. 510, 7 Am. R. R. & Corp. R. 619; but when this case is examined it is not so much subject to criticism as not well decided upon its own facts as in the general doctrine announced. The decision is rested upon provisions in the charter of the city of Baltimore, and the court states that it is concerned only with the power of the city under that charter. The legislative act, too, which confirmed the ordinance granting the franchise in the first instance, reserved the power of repeal or amendment as fully as it existed under the general charter, and what is called a "repealing ordinance" only restricted the original ordinance so far as to limit the company to a single, instead of a double, track on a street where public travel appears to have been almost completely obstructed, the track being laid after express notice of objection by the city. Much is said in the principal opinion, in the case not called for by the facts, and consequently the able and eminent Judge Alvey, in assenting to the result, says he "agrees that the repealing ordinance is valid, but does not think it necessary to express an opinion on some of the questions discussed in the opinion"; and Mr. Lewis, one of the ablest of the law writers, in a note to the case as reported, says:

"The foregoing case seems very much like a new departure. The grant of a right to lay down and operate a railway in a street, when acted upon, has generally been understood to vest the grantee with a property right, which could only be taken away by the exercise of the eminent domain power, and the making of just compensation. 1 Dill. Mun. Corp. 68a; 2 Dill. Mun. Corp. 701-797; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692; Detroit v. Detroit & H. Plank-Road Co., 43 Mich. 140, 5 N. W. 275; New Orleans Gaslight Co. v. Louisiana, etc., Manuf'g Co., 115 U. S. 650, 6 Sup. Ct. 252; Louisville Gas Co. v. Citizens' Gaslight Co., 115 U. S. 683, 6 Sup. Ct. 265; City of Buffalo v. Chadeayne (N. Y. App.) 31 N. E. 443; Savage v. City of Salem (Or.) 31 Pac. 832; Town of Arcata v. Arcata & M. R. Co., 92 Cal. 639, 28 Pac. 676."

It is perceptible, I think, that Judge Alvey was somewhat troubled at this setting forth of strange doctrine, not limited to the peculiar and exceptional facts of the case. Some labor is bestowed in the opinion on application to rehear to relieve the principle asserted, with the qualification that an action for damages might, under some circumstances, be maintained for the property thus destroyed; but what the measure of such damage would be, aside from the

prospect of long litigation, is not stated.   It is clearly not meant, however, that any compensation for the loss of the franchise and the destruction of the business would be possible or practicable. Perhaps the cross-ties and rails left, and their value as secondhand material, is the property referred to in this connection.   This would leave the company in the condition pointed out by the court in Railroad Co. v. Delamore, 114 U. S. 507, 5 Sup. Ct. 1009, in respect to a purchaser at a bankrupt sale; the court saying:

"The contention of the defendant, if sustained, would entirely destroy the value of the property as a railroad; for it is plain that a large part, if not all, the line of the railroad is laid upon the streets and public grounds of the city. If, therefore, the franchise of the right to occupy the streets and public grounds with the railroad track did not pass to the purchaser at the bankruptcy sale, then all that he took by his purchase was a lot of ties and iron rails, which he could be compelled at any time, by the order of the city authorities, to remove.   If the law be as contended by the defendant in error, a judicial sale of the railroad and its franchises would be the destruction of both."

It requires no large experience in the practical affairs of life to know that any statement about compensation in such case would be to keep the word of promise to the ear and break it to the hope. This same case (Lake Roland El. Ry. v. Mayor, etc., of Baltimore) is reported in 20 Lawy. Rep. Ann. 126, and in 54 Am. & Eng. R. Cas. 11, with a note making question as to its soundness.   The circuit court of the United States for the district of Maryland, in Baltimore Trust & Guarantee Co. v. Mayor, etc., of City of Baltimore, before referred to, expressly dissented from this decision, and ruled otherwise upon the same facts; and the case, it is said, is now in the supreme court of the United States.   The decision below was by a divided court.   If the ruling of the court of appeals had been limited in terms to the facts of the case, and rested on the ground that the street was completely destroyed as a public highway for all ordinary uses, the decision would have had some support in other cases, such as Dubach v. Railroad Co., 89 Mo. 483, 1 S. W. 86, and Lockwood v. Railroad Co., 122 Mo. 86, 26 S. W. 698.   As before suggested, the objection is not so much to the result of the case on its own facts as to the position maintained and the reasoning employed on the way to that result.   As it is, the opinion in the general statements of law cannot be sustained, notwithstanding the deservedly high character and authority of the court.

Upon what has been thus said, without further discussion, I am constrained to think that the repealing ordinance was invalid, and so hold.

The defendants' next contention is that the ordinance limited the grant of its consent to a period so long only as the company existed, and that by consolidation the franchise did not pass to the new company, the consolidation operating as an extinguishment of the consolidating companies.   The section of the ordinance upon which this defense is based is as follows:

"Sec. 8.   The rights and privileges herein granted are intended and understood to be and to exist for and during the corporate existence of the company."

In regard to this the court is of opinion that the city council was without authority to consent to the use of the streets for a period less than the duration of the franchise granted by the state, and that, if there was such limitation as supposed, it would be invalid. Citizens' St. R. Co. v. City Ry. Co., 64 Fed. 648. But I think it is clear beyond question that the city council meant to grant or give its consent during the existence of the franchise to the use of which on its streets it was consenting. It clearly did not contemplate any company, or the name of a company, as distinct from the franchise. Taking the ordinance as a whole, it is clear that these terms were used by way of enlargement, and not restriction. Whether the consolidation had the effect to work a dissolution of the old company and the creation of a new one depends on the legislative intent. Central Railroad & Banking Co. v. Georgia, 92 U. S. 665. The effect to be given the consolidation is declared in the statute as follows:

"1268. The corporation formed by the consolidation of two or more railroad corporations, shall have all the rights, powers, privileges, immunities and franchises and be subject to all the duties and obligations, not inconsistent with the provisions of this article, conferred and imposed by the laws of this state upon such companies so consolidating, or either of them."

Upon the authority of the case last cited and of Chesapeake & O. R. Co. v. Virginia, 94 U. S. 718; Green Co. v. Conness, 109 U. S. 104, 3 Sup. Ct. 69; Tennessee v. Whitworth, 117 U. S. 139, 6 Sup. Ct. 649; Tomlinson v. Branch, 15 Wall. 460; and Branch v. City of Charleston, 92 U. S. 678,—I am of opinion the consolidation in question worked a change of name, and that all of the rights and franchises, including the easement on the streets of Knoxville, of the constituent companies, belonged to the consolidated company (Miller v. Lancaster, 5 Cold. 514; Memphis Water Co. v. Megens, 15 Lea, 43), and that under the statutes of this state the same passed under the lien of the mortgage, and were transferred by the foreclosure sale to the complainant (Tayl. Priv. Corp. § 424, and cases cited). In addition to consolidation, the railway has been changed from one of animal power to electricity, and to both of these consent of the city must be obtained. Acts 1887, c. 65; Acts 1889, c. 40; Telegraph & Telephone Co. v. United Electric Ry. Co., 93 Tenn. 497, 29 S. W. 104. If such consent has been given in due form, it is probable this objection is no longer open to the defendant.

The remaining defenses are those of abandonment, and that the plaintiff entered upon the streets recently for the purpose, not of the bona fide execution of its work and the operation of its railroad, but to place an obstruction in the way of the new company. In regard to abandonment, it is to be borne in mind, as before stated, that the city does not grant any franchise. It simply gives its consent to the franchise granted by the state; and there is some difficulty in speaking of such thing as the plaintiff having abandoned this consent. This consent was the final fact which completed the franchise granted by the state, and the right to the use of the same, and the right could, therefore, only be abandoned (if that term is applicable) in such way as any other corporate franchise granted by the

state may be. There is no time limit in the ordinance nor in the charter, and, without now taking up space in this opinion to discuss this point at length, I think this defense cannot be sustained, and that the question of forfeiture for nonuser cannot be raised in this proceeding. Gaslight Co. v. Green (N. J. Ch.) 18 Atl. 844, and case supra; Briggs v. Canal Co., 137 Mass. 71; Tayl. Priv. Corp. §§ 458–460, and cases.

In regard to the question of the plaintiff's good faith, there are circumstances disclosed in the answer which, if true, tend to show that the plaintiff's purpose is obstruction only. Plaintiff states under oath in the bill that the occupation of the streets was in good faith, and after extensive preparation for the execution of the work; and I think it would be unsafe on this application to deny an injunction upon the ground that this defense may be sustained on the final hearing. Speak v. Ransom, 2 Tenn. Ch. 210; Flippin v. Knaffle, Id. 238; Tyne v. Dougherty, 3 Tenn. Ch. 52. This is virtually a bill for injunctive relief only, and to deny the provisional injunction would be, in effect, to deny all relief, and decide the case on its merits. If the court should do so, and allow the new company to construct its line over these streets pending this litigation, and the issues should be decided in plaintiff's favor upon the hearing, the situation would then be difficult to deal with. It appears that the city has by injunction stopped the work by plaintiff for the present. If the plaintiff should be left free to act, and should fail to go forward in the execution of the work, the court would feel free at any time to entertain a motion to dissolve the injunction. The suggestion in the answers and in argument that plaintiff's right had been lost by certain applications made to the city council for consent in certain instances to do work has not been thought sufficiently serious for extended consideration. Certainly the city has not been misled nor prejudiced by anything alleged in this respect, and there seems to be a total want of any basis for the application of estoppel. As to Gay street, already occupied, and a want of power in the new company to use or in any manner appropriate the plaintiff's line of railway on that street, I need only refer upon this point to what was said in the recent case of Railway Co. v. Felton, 69 Fed. 280; Mills, Em. Dom. (Last Ed.) § 37; and Crosw. Electr. § 121, and cases.

In the view thus taken of the case, I have not found it necessary for any practical purpose to consider, further than has been done, the distinction between the authority of the city to grant a franchise proper and its more limited authority to give its consent to one granted by the state; for, whether it is acting under the one power or the other, the ordinance passed pursuant to authority delegated to such municipality by the legislature becomes a contract as much as if it were granting the franchise itself, and is under constitutional protection as such; and for the same reason the court has not deemed it necessary to determine whether or not, as contended by plaintiff, the transaction between the company and the city establishes a contractual relation, as these terms are used in regard to ordinary contracts executed in form as such. The statute refers to the transaction in terms as the consummation of a contract, but whether this adds any

force to its legal effect, as contradistinguished from a simple grant and acceptance, is not now decided. And section 7 of the ordinance is as follows:

"Sec. 7. Be it further ordained that this ordinance shall have all the force and effect of a written contract made with the said Knoxville Street Railroad Company, and formally entered into under the seal of the corporation of Knoxville. Provided always, the obligation hereto shall be mutually binding."

Whether this, with the statute, adds to or changes the effect of an ordinary grant, with acceptance and use thereof, in its bearing on any of the questions here involved, I do not find it necessary to decide. The result is that the injunction is allowed. It only remains to add here what should have been said before: that the plaintiff has no exclusive franchise, and that the city has at all times been free to grant franchises to a rival company, and that between the franchises of the two companies now contending for the right of way prior occupancy determines the prior right, although it would seem from some cases (Indianapolis Cable St. R. Co. v. Citizens' St. R. Co. [Ind. Sup.] 24 N. E. 1054; Railway Co. v. Alling, 99 U. S. 463; Homestead St. Ry. Co. v. Pittsburg & H. Electric St. Ry. Co., 166 Pa. St. 162, 30 Atl. 950) that, where the street does not admit of being occupied by two tracks, the older company is entitled to priority in the use of such street.